KANSAS CITY v. JONES STORE COMPANY ET AL., Appellants, No. 29710.

KANSAS CITY v. THE JONES STORE COMPANY ET AL., Appellants, No. 30205.—28 S. W. (2d) 1008.

Court en Banc, June 3, 1930.

228

*Winger, Reeder, Barker, Gumbiner & Hazard* for appellant The Jones Store Company.

*Charles L. Carr, Louis R. Weiss* and *John R. Moberly* for appellant Kansas City City Public Service Company.

*Erwin O. Kunau* for appellant Kansas City Socialer Turnverein.

*Russell Maloney* for appellants George A. Jakobe et al.

*Rosenberger, McVey & Freet* for appellants Albert L. Gustin and John W. Foyle.

*Charles H. Thompson* for appellants Ada E. Waddell and Leonard Everett.

*John T. Barker* and *J. C. Petherbridge* for respondent Kansas City.

*McCune, Caldwell & Downing* for respondents John J. Van Evera et al.

*Meredith & Harwood* for respondent R. B. Slaughter.

WHITE, J.—These two cases were argued and submitted together.

The first was a proceeding under Article VI of the Charter of Kansas City for the purpose of widening Fifteenth Street from Campbell Street on the east to Baltimore Avenue on the west. Fifteenth Street was already one hundred feet wide from the eastern city limits to Campbell Street. From Campbell Street west to Grand Avenue, about seven blocks, it was seventy feet wide; along that part of the street 29½ feet were taken off the property on the south side. From Grand Avenue to Baltimore Avenue, three blocks, the street was fifty feet wide, and for that distance 49½ feet were taken off the property along the south side of Fifteenth Street.

Beginning about seven blocks east of Campbell Street a benefit district was laid out embracing a territory of one-half block on each side of Fifteenth Street from that point to the middle of the block between Oak and McGee streets, the latter being the first street east of Grand Avenue. Then the benefit district extended north more than five blocks, west from that point five or six blocks, and south about a block and a half, embracing apparently a large part of the business district of the city.

Ordinance No. 55188 was passed, describing the property taken and the property to be benefited, under Section 129, Article VI of the Charter, and the proceeding was begun in the Circuit Court of Jackson County. A jury was impaneled under Section 142, Article VI, of the Charter, and the trial proceeded. Several of the parties whose property was condemned appeared. One of them, Levy Brothers, a corporation, elected to have damages assessed by common law jury. This was accordingly done. The others whose property was taken appeared and contested the proceeding.

**240**

Some of those within the benefit district entered their appearance under Section 140, Article VI. Damages were assessed to the owners of the property taken, and benefits assessed to those in the benefit district according to the valuation of the land, exclusive of improvements. Judgment was entered accordingly. Three of the owners of property taken appealed in due form. Several of those within the benefit district, affected only by the benefits assessed, also appealed. That is case No. 29710.

After that case was appealed to this court, and after the briefs of some of the appellants had been served upon the city, the city, October 16, 1929, filed a motion to amend the bill of exceptions by incorporating in the bill the *voir dire* examination of the jury impaneled to assess damages and benefits. On the same day the city filed also a motion to correct the record so as to show that the jurors impaneled were six disinterested freeholders of Kansas City, the record proper having failed to show it. Some defendants filed motions to strike out those motions. These were overruled October 26, 1929, and the two motions filed by the city sustained. Motions were filed by several of the defendants asking the court to set aside the orders sustaining the two motions to amend the bill of exceptions and correct the record, and praying for a rehearing on such motions. The court overruled each and all of said motions and those defendants duly appealed from the order. That is Case No. 30205.

Of those appealing were Kansas City Public Service Company, Ida E. Waddell and Leonard Everett, whose property was condemned to widen Fifteenth Street, while Jones Store Company, Albert L. Gustin, John W. Foyle, Kansas City Socialer Turnverein, George A. Jakobe, et al., were in the benefit district and appealed on account of the alleged excessive benefits assessed to their property.

I. It is first claimed by several appellants that the trial court was without jurisdiction to condemn the property or assess benefits and damages because the ordinance, order empaneling the jury, and notice of publication failed to describe the property to be taken as required by law. It is further claimed that it failed to describe the property included within the benefit district as required by law.

Article VI of the Kansas City charter authorizes the city to exercise the power of eminent domain and determine the damage caused to private property by any public work, improvement, use or restriction.

Section 129 of the Article requires that whenever any ordinance shall provide for the purchase, taking or damaging of any private property, etc., "the city shall by ordinance describe the private property to be so taken, purchased, damaged or restricted" and

"the council shall also by ordinance prescribe the limits of the district within which the private property shall be deemed to be benefited by the proposed improvement, and be assessed and charged to pay compensation therefor," and, "in any such ordinance separate description of each piece or parcel of property affected shall not be required; but it shall be a sufficient description of the property to be purchased, taken or damaged, to give a description by metes and bounds of the entire tract or tracts so to be purchased, taken or damaged, whether the same be composed of one or more than one piece or parcel."

Respondents claim Ordinance No. 55188 was passed in accordance with that section, and in accordance with Section 130, Article VI, of the Charter, the engineer and his assistant prepared a plat containing a correct description of their several lots or parcels of private property taken or damaged, etc.

Then the city, in accordance with Section 131, Article VI, filed in the Circuit Court of Jackson County a duly certified copy of the ordinance, together with said plat or map, as required, when the proceeding was begun.

The objection of the appellants to the description of the property condemned is that it does not set out by metes and bounds nor by lot number, each particular tract of land, but is a blanket description and includes property of the city, north and south streets and alleys. It begins with Campbell Street on the east and describes the land by a line running around that part of the private property to be condemned on the south side of Fifteenth Street, from Baltimore Avenue to Campbell Street, and includes the cross streets and alleys in the strip described. The same objection is urged to the benefit district. It is described by a boundary around all the land included in the benefit district, with streets and alleys that run through it in different directions. The section of the Ordinance No. 55188 describing the property taken, ends with this sentence:

"All private property within the said boundary lines is hereby taken and condemned for public use as a part of Fifteenth Street so opened, widened, extended and established."

The description of the benefit district in the same ordinance begins thus:

"The council hereby determines and prescribes the limits within which private property shall be deemed benefited by the improvement herein proposed and be assessed and charged to pay compensation therefor, as follows:"

Thus the objection that streets and alleys are included within the boundaries of the property condemned to widen Fifteenth Street and within the boundaries of the benefit district is met by the terms of the ordinance itself which includes only the *private prop-*

*erty* within those boundaries. Every appellant here affected by the proceeding knew just exactly what part of his or her property was affected by it. The sections of the charter quoted above pro-vide that "in such ordinance, separate description of each piece or parcel of property affected shall not be required."

The property *affected* includes all the property condemned and all within the benefit district.

That section of the charter goes on as follows:

"But it shall be a sufficient description of the property to be purchased, taken or damaged, to give a description by metes and bounds of the entire tract or tracts to be purchased, taken or dam-aged whether the same be composed of one or more than one piece or parcel."

That part of the section would apply to the property taken in widening the street. It might be said that in terms it does not apply to the benefit district because it is not property "purchased, taken or damaged." But property in the benefit district is *"affected"* and a separate description of each parcel is not required. It is in the same condition as if this definite direction about how to describe property actually taken was used with reference to it.

Each one of these appellants not only knew and could tell from the general description how his property was affected, but that description was aided by the map and plat which was filed with the ordinance of which he had full notice. Each one of these ap-pellants appeared at the trial without objection to the description and the case was tried through to the finish without any objec-tion on account of the defective description of the property con-demned, or the property in the benefit district. They are hardly in position now to claim they didn't know what particular prop-erty of each was taken or benefited. In State ex rel. Siegel v. Grimm, 314 Mo. 242, 1. c. 254, a description quite similar to the one under consideration here in a condemnation proceeding in St. Louis, was held sufficient, although it was not put upon the ground that the charter of that city provided for a general description by metes and bounds of all the property to be taken or benefited.

II. It is next complained that the court was without juris-diction, because the proceeding failed to show affirmatively that the members of the jury impaneled to try this case were disinterested freeholders of Kansas City. Section 132, Article VI, of the Charter, provides that the city shall make an order appointing a day and a place for impaneling a jury to ascertain the compensation to be paid for private property taken or damaged, and to make assessments to pay for private property so taken or damaged. Section 142 of Article VI, provides that the court, upon the day

fixed, "shall impanel a jury of six disinterested freeholders of the city." That is quoted by appellants and it is pointed out that the record proper of January 7, 1928, showed only the following in relation to impaneling the jury: "Now the following jury is impaneled and sworn to try this case, to-wit," then follows the names of the six jurors, and a day is set to hear the evidence. The original bill of exceptions recited that, February 6, 1928, . . . . "this case coming on to be heard before the Honorable A. Standford Lyon, Judge of said Court, and a *jury heretofore duly empaneled and sworn,*" etc.

As to the expression "duly empaneled" appellants claim that it has no significance appearing in the bill of exceptions; that the record proper must show that the jury was duly impaneled and sworn.

After the case had gone to trial, the damages and benefits assessed and appeal taken to this court, and after a bill of exceptions had been duly filed and abstract of the record presented and filed in this court October 16, 1929, the respondent city, as stated above, filed in the circuit court a motion to amend the bill of exceptions so as to show the *voir dire* examination of the jurors on January 7, 1928, before they were sworn to try the case. On the same day the city filed a motion in the circuit court asking the court to correct its record regarding the impaneling of the jury so as to make it speak the truth, and show that they were disinterested freeholders of Kansas City.

The trial court took up the motions October 26, 1929, overruled all the motions to strike out, and sustained the city's motion to amend the bill of exceptions by adding the stenographer's notes on the examination of the jury in its *voir dire* and also sustained the motion to correct the record made January 7, 1928, in relation to that matter. In support of the motion to amend the bill of exceptions the official reporter identified his stenographic notes of the examination of the jurors on their *voir dire* January 7, 1928. Those notes showed that the jurors were asked by Mr. Petherbridge, representing the city, whether each of them had real estate in his own name in Kansas City, Missouri, and each indicated that he owned such property. Attorneys representing defendants asked questions as to their qualifications and their interest in the matter. No one representing any one of the defendants questioned the qualifications of any juror as a freeholder. An attorney for one of the respondents to whom benefits were assessed made affidavit that he didn't see the bill of exceptions or know when it was filed. A transcript of that evidence was by order of the court added as an amendment to the bill of exceptions. These appellants prepared their original bill of exceptions omitting that feature—a necessary part of the bill of exceptions if appellants desired to ques-

tion on appeal the qualifications of the jurors. They are hardly in position now to claim that the court is without jurisdiction of the case on account of that omission, presented as a question of fact.

It is claimed that the court had no right to amend the bill of exceptions because the motion was filed after the cause was docketed and in this court for hearing, and the order was made within a few days of that time. It is said that the case was first set for hearing November 8, 1929. The motion to amend was sustained October 26th before; at that time the case had been set for hearing in this Court January 30, 1930. Under Section 1460, Revised Statutes 1919, the time for serving an abstract of the record, and hence the time for filing the bill, is any time before thirty days prior to the time the cause is set for hearing. Section 1460 with all its amendments historically considered was interpreted by this Court in Smith v. Ohio Millers Mutual Fire Insurance Company, 320 Mo. 146, 6 S. W. (2d) 925, and the interpretation adapted to the necessity of preserving records under all conditions. Under Section 12668, Revised Statutes 1919, the trial court is authorized to appoint a stenographer "for the purpose of preserving the record in all cases." Bills of exceptions must be made up largely from the stenographer's notes and not from the judge's recollection of the evidence and the rulings in the progress of the trial. When no such record was kept it was necessary to have such bill of exceptions approved and filed at the time or during the term. Now a bill of exceptions may be approved and filed at any time before the abstract of the record must be filed in the appellate court. When a bill of exceptions is thus approved and filed it is subject to amendatory motions like any other record of the court. [Darrier v. Darrier, 58 Mo. 1. c. 233; Ford v. Wabash Ry. Co., 318 Mo. 723, 734.] Any other record may be amended during the term by the court from memory in the court's breast of what happened. It may be amended after the term by *nunc pro tunc* entry on a proper showing. [State ex rel. McSweeney v. Cox, 315 Mo. 1332; Manthey v. Kellerman Contracting Co., 311 Mo. 1. c. 157.] The two cases last mentioned speak of an amendment after the term as a *nunc pro tunc* entry. But the ruling in Smith v. Ohio Millers Ins. Co., supra, is in strict accord with the statute, Section 1460, and with the necessity of preserving the evidence by stenographic notes. When a bill of exceptions is filed after the end of the term the order filing it is not a *nunc pro tunc* entry. It is an original entry of the time at which it is filed, because the statute expressly permits it to be filed at such time. Since a bill of exceptions so filed may be amended like any other record, such an amendment, if made within the time when the bill of exceptions may be *filed,* is not made by *nunc pro tunc* entry, but by an original entry made as of and at the time at which the order occurs. In

this case the amendment was allowed by the court on the 26th day of October. The case was docketed for hearing on the 30th day of January, following. It does not matter how that docketing occurred, whether by resetting or by an original setting. [Smith v. Ohio Millers Mut. Fire Ins. Co., 6 S. W. (2d) l. c. 927.] The amendment was allowed within the time in which the original bill of exceptions might be filed. While the trial court loses jurisdiction of the *case* when an appeal is taken, it does not lose the jurisdiction of its records. Having jurisdiction to permit the bill of exceptions to be filed it had jurisdiction to permit an amendment. This court said in Manthey v. Kellerman Contr. Co., 311 Mo. 156-7: "A bill of exceptions, when duly filed in a case, becomes a part of the record, and is consequently subject to the operation in appropriate cases of amendatory motions, to the same extent, and under the same restrictions as other parts of the record."

III. Then we come to the objection that the court was without jurisdiction to correct its record so as to show that six disinterested freeholders served on the jury. That correction necessarily was by *nunc pro tunc* entry. The authorities are in conflict as to whether a stenographer's notes may be sufficient memorandum from which the court may make such correction. It has been held that such notes are not sufficient memorandum from which to enter a record *nunc pro tunc*. [Becher v. Deuser, 169 Mo. 159.] When such notes are transcribed and incorporated in a bill of exceptions that bill of exceptions becomes a part of the record. The record as corrected, reads:

"Now on this 7th day of January, 1928, the following (disinterested freeholders) of Kansas City, Missouri, were (duly) impaneled and sworn to try this cause."

The original record copied above omitted the words "disinterested freeholders" and "duly." Otherwise it was substantially as above. Besides, the original bill of exceptions before the amendment recited among other things that the case came on before "a jury heretofore duly impaneled and sworn."

While that would not be equivalent to an order in the record proper, it is a recital in the bill of exceptions and is a sufficient minute from which the court could make a *nunc pro tunc* entry correcting the record.

The word "duly" in connection with the word "impanel" is sufficient to imply the necessary qualification in the jurors. Corpus Juris, vol. 19 p. 833, says of the word "duly:" "The word has acquired a fixed legal meaning, and when used before any word implying action, it means that the act was done properly, regularly and according to law, or some rule of law."

Then, if the jury was "duly" impaneled it was impaneled according to law, and must have been composed of disinterested freeholders. Corpus Juris on the page cited gives a number of acts qualified by the word duly in which that significance is given to the term; among them are "duly sworn," "duly authorized," "duly commissioned," etc. This court in several cases has held that the word "duly" in the proper connection has the significance given it in Corpus Juris.

In Edwardson v. Garnhart, 56 Mo. 81, l. c. 86, where a referee's report states that having been duly qualified he caused the parties to be notified, etc., it was held that the recital was sufficient to show that he had been sworn. [State v. Duncan, 237 Mo. 1. c. 202.] In Barnett v. Bellows, 287 S. W. l. c. 606, it was held that under Section 513, Revised Statutes 1919, when a second will is destroyed a former will cannot be revived "unless he shall duly republish his first will." The word "duly" was held to mean that all the formalities required by the statute were observed.

The appellants cite some cases where in condemnation proceedings the record must recite all the facts, showing jurisdiction. Those are all cases arising in courts not of record. No presumption can be indulged as to the regularity of the proceedings as in a court of record.

IV. The appellant Kansas City Public Service Company complains that the verdict left out of the description a part of its land taken when the damages were assessed by the jury. That company had its office building situated between Grand Avenue and Walnut Street along the entire length of the block on Fifteenth Street; 49½ feet of those buildings and the ground on which they stood facing Fifteenth Street were taken. Originally that ground had been laid off as a part of McGee's Addition. Lot 244 fronted on Walnut Street, and lot 253 fronted on Grand Avenue, the north line of those lots being Fifteenth Street. Between lots 244 and 253 was a space 16½ feet wide running from Fifteenth Street south the width of those lots. The claim of appellant is that the part of that tract 16½ feet wide east and west, and 49½ feet north and south, was taken without description and without an award of damage for it.

It is noted on the plat of McGee's Addition as an alley. The city in its brief asserts that the alley was vacated many years ago. Since the Public Service Company claims the land, it could only do so on the ground that it had been vacated. It does not attempt to show title acquired in any other way. The city asserts that having been vacated the ground reverted to and became a part of lots 244 and 253, and title vested in the owner of those lots.

The plat filed with the ordinance in the condemnation proceeding describes tracts 6 and 7 to be condemned. On tract 6, which included lot 253, was a five-story building. On tract 7, which included the alley along with the lot 244, was a four-story building. The Public Service Company in a plat "Exhibit 18" attached to the files shows the two lots and the alley all together as "Tract A" upon which the two buildings and the general offices were located. Photographs of the building in that defendant's exhibit show that the buildings joined together cover the entire Fifteenth Street front, including the 16½ feet mentioned as an alley. In examining the witnesses as to the value of the land and the buildings, and the damage to the defendants by taking 49½ feet off the Fifteenth Street side, all the witnesses for both the plaintiff and the defendant valued them as including the former alleyway with the rest. That is, defendant's witnesses were examined as to tract 6 and tract 7, and made their estimates upon the buildings on tracts 6 and 7, and the ground on which they were situated, and the damage to the remaining part of the defendant's property.

The defendant presented an elaborate table of figures showing the different parts of the buildings, reproduction costs, and everything that could enter into their value and the value of the part of the buildings remaining after taking the 49½ feet off the entire length. They were mentioned throughout the evidence as tracts 6 and 7, which included the tract called an alley.

The defendant calls attention to the verdict of the jury in which the damages are assessed for the part taken from lot 244, and the part taken from lot 253, and the damage to the remainder of the tracts. The verdict mentions the two parts as tracts 6 and 7, and goes on to assess the value to the remaining part of tract number 6, and the remaining part of tract 7. The *judgment* condemns the entire 49½ feet clear through from Walnut to Grand, including the 16½ feet, and it is claimed that the judgment is broader than the verdict—covers ground for the taking of which no damage was assessed in the verdict. While the evidence shows the entire part of the building taken, as well as all the ground, were considered in reaching a verdict, this appellant asserts reversible error because of that alleged defect in the verdict.

Section 365, Article XI, of the Kansas City Charter, provides that if public property is vacated, "if the same be a public street, avenue, alley or other highway, the title shall vest in the person or corporation owning the property on each side thereof in equal proportions according to the length and breadth of such land as the same may border thereon and as the title to such bordering lands may be held by such owners thereof, respectively."

When this defendant acquired title to this alley it acquired such title because of its ownership of the lots, or it became the

property of this defendant's grantors, or whoever owned lots 244 and 253 at the time the alley was vacated. It became, then, a part of such lots. This court in Neil v. Independent Realty Company, 317 Mo. 1235, 298 S. W. 363, construed a section of the Kansas City Charter which is the same as the present Section 365, and called attention (l. c. 1247 and 368), to Section 9287, Revised Statutes 1919, which provides that, when a plat of city or village additions are filed, the fee of such parcels of land intended for public use shall vest in the city in trust for such uses and for no other purpose. In construing that section the court held that such conveyance was not of a fee simple title.

The conveyance of the property owner's lot abutting upon a street or alley, will carry the fee in the street or alley. [Snoddy v. Bolen, 122 Mo. 483; Thomas v. Hunt, 134 Mo. 1. c. 402; Neil v. Independent Realty Company, 298 S. W. 1. c. 369.]

On the vacation of the street or alley the right of possession reverts to the owner of the abutting lot. The defendant Public Service Company does not claim title to the former alley between lots 244 and 253, except by vacation of that alley. It has not attempted to show that it acquired title in any other way. It was formerly an alley and at the time of the trial it was in the possession of that defendant as the owner of those lots. If title would pass to the alley by a conveyance of the lots, then the condemnation of the lots would include the alley.

All through the trial this defendant estimated the damages to the buildings and the value of the ground taken as if the 16½ feet was a part of those lots.

One of the defendant's witnesses in estimating the damage to the property taken figured the number of square feet in tracts 6 and 7, including the 16½-foot space.

The verdict mentions those lots as tracts 6 and 7. Those tracts included the 16½-foot space. This appellant was assessed damage for that space and the structures on it.

In its motion for new trial this defendant mentions tracts 6 and 7, comprising parts of lots 244 and 253, "also the vacated alley extending south from Fifteenth Street, and adjoining and lying between said lots 244 and 253." But the motion nowhere mentions the omission of the vacated alley in the verdict, now alleged as error. The defendant is not in position to complain here of the alleged error.

V. The defendant moved to strike out the evidence of two witnesses produced by the city, William E. Lyons and Charles F. Curry. It is claimed here that the witnesses were not qualified to testify to real estate values. When Lyons was sworn he testified that he had resided in Kansas City thirty-five years; he had been in the real estate business, and

all that goes with it, including mortgage loans, for that time in Kansas City, and that he had become familiar with the values of real estate in various parts of the city. No objection was offered at the time to his qualification. He was examined at length by Mr. Carr, representing the Public Service Company, not for the purpose of testing his general qualifications, but for the purpose of discrediting him as to his particular knowledge of that defendant's property. His cross-examination showed that the witness understood just how the property stood and how it was affected by the condemnation. After defendant's counsel had entirely finished his cross-examination at great length, he moved that the testimony of Mr. Lyons be stricken out, because there was no showing that Lyons was qualified to testify about the said buildings and improvements, and did not obtain first hand information as to the improvements, that his opinion was a mere guess. While that motion came too late to be available, it did not pretend to question Mr. Lyons's qualifications as a real estate expert. The only claim in the motion, an oral one, was that his testimony was discredited by the cross-examination. That was a matter entirely for the jury.

Mr. Curry followed Mr. Lyons. Lyons in closing his testimony said that he had examined the various tracts in connection with Curry, the two had worked together and agreed on figures. That was offered as a ground for the disqualification of Curry. It would show only that these two men together went over the property carefully and checked up the results of their observations and reached a substantial agreement. If there was anything in that to discredit the witnesses, it was a matter entirely for the jury.

Mr. Curry testified that he had lived in Kansas City thirty years, and had been engaged in the real estate business eight years; that during that eight years he had been doing some building in connection with development of suburban property; that he had made an investigation of the properties condemned in this proceeding; that he had heard Lyons testify and that he was in substantial agreement with Lyons. There was no objection to his testifying upon that qualification. After he had made that statement Mr. Carr, for defendant, moved to strike out his testimony as of no probative force and no help to the jury in arriving at the values of the property. No objection on account of his having failed to qualify as an expert in the values of real estate; no question asked further testing his qualifications. That motion was properly overruled; the evidence was for the jury.

VI. The Public Service Company complains of the damage awarded. The evidence was conflicting, as was to be expected in a

matter of that kind. The property taken was 49½ feet facing Fifteenth Street, cutting that amount off the buildings of that defendant through the block from Walnut to Grand, approximately, as we get it from the plat, 245 feet. The award was for the value of the property taken and the damage to the remainder of that defendant's property thus cut in two. The amount of award was $453,218, and that agreed with the estimate of a number of witnesses. This defendant offered evidence which placed the damage at a larger figure averaging over seven hundred thousand dollars. The jury who viewed the property were freeholders, and had some understanding of values themselves. There is nothing in the record to show that this award was arbitrary, confiscatory, or so disproportionate as to require a reversal of the judgment. The trial court heard the evidence and refused to set aside the verdict on the motion of that defendant.

VII. Appellants Waddell and Everett make a further point that while the Charter provides that in a condemnation proceeding compensation for property damaged but not taken shall be ascertained and paid, in this proceeding the ordinance, No. 55188, does not provide for ascertaining compensation for private property damaged but not taken, and that that is a jurisdictional defect. They had property damaged by the proceeding but not taken.

If they are correct in that, then as to that property they are not bound by this proceeding, and under Section 21, Article II, of the Constitution of Missouri, they have their remedy. [McGrew v. Paving Co., 247 Mo. 549.] The failure to include such property and assess compensation for it does not invalidate this proceeding. The owners of other property have no right to complain. These appellants, in so far as they got compensation for the property actually taken, have no right to complain.

VIII. One point pressed by these defendants whose property was condemned is that under the evidence the award of damages was insufficient. Section 21, Article II, of the Constitution requires damages in a condemnation proceeding to be assessed by a jury of freeholders, but where a private corporation is a party to the proceeding, such as in the case of the Public Service Company and the Jones Store Company, such party has a right to a common-law jury, under Section 4, Article XII, of the Constitution. One defendant whose property was condemned, Levy Brothers, elected to take a common-law jury and have its damages so assessed.

None of the others did. They preferred to have their damages assessed by a jury of freeholders and are bound by the proceeding in such case.

A jury of freeholders is not limited to the evidence produced, as is a common-law jury. Such a jury, under Section 144, Article VI of the Charter of Kansas City, may examine personally each piece of property described in the map or plat filed in the case, all property claimed to be damaged, and the City Engineer, the Director of Public Works, or the Superintendent of Parks, or any assistant of any of them may accompany such jury for the purpose of pointing out the property condemned. Thus the jury can reach a conclusion with or without the assistance of any evidence produced before them, having the benefit of expert assistance in the examination of the property. The result reached is conclusive unless the court is satisfied that they have erred in the principle upon which they have made their appraisal. [Kansas City v. Smart, 128 Mo. l. c. 295.] The charter also provides a method by which the compensation is fixed. [Section 149.] There does not appear in the record here any violation of the rule provided for fixing such compensation.

IX. Several of the appellants, the Jones Store Company, the Kansas City Socialer Turnverein, George Jakobe et al., Ada Waddell, Gustin and Foyle, being in the benefit district, complain of the amount of benefits assessed against them. Each of them complains about the jurisdiction of the court for a want of a definite description of the property, and on account of the alleged lack of record showing the impaneling of a jury of freeholders, all of which have been considered above.

Jones Store Company's property to which benefits were assessed consisted of twelve lots or parts of lots within about two blocks of Fifteenth Street as widened—almost an entire block. The entire benefit assessed to that company was $21,075. The city points out that the real value of such property exceeded three million dollars.

Jakobe and others point out that their own property was assessed for general taxes at a valuation of seven thousand dollars, and that the benefits assessed against each for this improvement was five thousand dollars. In answer to that the city calls attention to the fact that property was usually assessed for general taxes at about two-fifths of its market value; that this property of defendants had valuable improvements which were not taken into consideration in assessing the land, regardless of improvements; that the total value of the land and the total value of the property and improvements were very much in excess of the benefits, which would be a small percentage of the total.

252

The said defendants complained of the manner in which the jury assessed benefits; that it used two methods: assessed benefit by the front foot on Fifteenth Street and a small part of Baltimore Avenue, and assessed the property off of Fifteenth Street at percentages of its assessed valuation. There is nothing in the record to show that the property was assessed by different methods, or that the front-foot rule was applied. But even if it was, it doesn't matter by what method the jury arrived at the benefits. They were instructed to determine "the value of the benefit of the proposed improvement to each and every lot, piece and parcel of private real property exclusive of buildings and improvements thereon within the benefit district, if you find any benefit to accrue thereto." And they were further instructed:

"You will assess no property with benefits which is not actually and specially benefited by the proposed improvement."

This appellant calls attention to the fact that the percentage of benefits assessed compared with the assessed valuation was very much higher in some parts of the benefit district than in others. Naturally that would be so. We do not find in the list of benefits assessed any great discrepancy between lots or parcels of land similarly situated. There is nothing to show, as appellants claim, that the benefits assessed were grossly arbitrary, unreasonable and confiscatory. The same may be said of like complaints made by the Kansas City Socialer Turnverein, Gustin and Foyle.

The laying off of a benefit district for special improvement is purely a legislative function. [Haeussler Inv. Co. v. Bates, 306 Mo. 412.] The assessment for benefits in such case is referable to the taxing power.

The legislative authority, such as the Kansas City Council had, may fix the territorial limits of a taxing district. Under Section 140, Article VI of the Charter, the owner of any property in the district could appear and be heard as to whether his property should be included. There appears no complaint of that kind. Of the amount assessed he cannot complain unless the apportionment were palpably arbitrary and a plain abuse of the owner's constitutional rights. [West v. Burke, 286 Mo. 1. c. 373-374; State ex rel. Manion v. Dawson, 284 Mo. 1. c. 506-7.]

X. It is further claimed by some of these appellants that the verdict was void because some public property was assessed. The Kansas City School District was assessed a special benefit of $14,050. The school district is not complaining and these parties do not appear as taxpayers in the school district. They are in court only as those to whom benefits were assessed as parties to the proceeding. They have no right to complain for the school district.

XI. It was further complained that there was error in the assessment of one dollar benefit to the city of Kansas City. That matter of benefit to the city was put to the jury as provided in Section 151, Article VI, of the Charter. The jury with the ample powers given it by the Charter had the right to determine that matter, and no reason is advanced why it was not correctly determined.

XII. H. F. McElroy was introduced by the city as a witness. He testified that the city was not specially benefited by the opening of Fifteenth Street, and in a general way as to the benefits to other property. His testimony was objected to and it was moved that the jury be discharged. The court overruled the motion to discharge the jury, but instructed them to disregard McElroy's evidence. He testified that he was acquainted with the city's finances, knew the processes by which taxes could be levied, and that there was no provision in the Charter for the setting aside of any funds for the purchase of streets, alleys or for public uses. We are unable to understand on what theory some of his evidence was not competent. Certainly the appellants were not injured by his testimony after it was stricken out by the court.

The judgments in Case No. 29710 and Case No. 30205 are affirmed. All concur.