**STATE of Missouri, Respondent,**

v.

**Joseph L. WALLACE, Appellant.**

**No. 57470.**

Supreme Court of Missouri,
Division No. 2.

Dec. 10, 1973.

Motion for Rehearing or to Transfer to
Court en Banc Denied Jan. 14, 1974.

John C. Danforth, Atty. Gen., Vincent F. Igoe, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

Alan E. DeWoskin, St. Louis, for appellant.

HENLEY, Presiding Judge.

Joseph L. Wallace, defendant, appeals from a judgment sentencing him to imprisonment for life on his conviction by a jury of first degree murder. The notice of appeal was filed prior to January 1, 1972, the effective date of the 1970 amendment of Mo.Const. Art. V, § 3, V.A.M.S. We affirm.

Defendant contends that there was not sufficient evidence to sustain the conviction. Purtis Pool testified that he was in Jim's Service Station located at 17th and Cass in the City of St. Louis on the evening of November 4, 1970, at about 7:30 o'clock, talking with its owner, James Shivers; that Mr. Shivers was seated with his feet up on his desk and he (witness) was leaning on the desk facing Shivers when defendant and another man walked in the door and asked to use the telephone; that immediately after using the telephone, he heard defendant say, "Don't nobody move, this is a stick-up, don't nobody move"; that as he heard this voice, he looked to his left and saw defendant with a pistol in his hand pointed at Jim Shivers; that in response to the announcement that this is a stick-up, Mr. Shivers said, "You have got to be kidding," and started to stand up; that as Shivers moved, defendant fired three shots at him and Shivers slumped over the desk; that he (witness) grabbed the gun, struggled with defendant, and was shot during the struggle. There was medical testimony that Mr. Shivers was dead on arrival at the City Hospital a few minutes later. A post-mortem examination performed the next day showed that he received three gunshot wounds, one of which had entered his left chest, penetrated his heart, and produced death. The other two shots entered his arms. This evidence is sufficient to support the conviction.

The first point briefed by defendant is that the court erred in overruling his motion for an order directing the state to advance or pay the cost for him to take the deposition of 23 witnesses endorsed on the information. He asserts that proper preparation of his defense by counsel required that he take the deposition of these wit-

nesses, but that he could not do so because of his indigency; that since an accused with financial means may take the deposition of witnesses (§ 545.400, Rule 25.10 [1]) in preparation for trial, to permit his indigency to deny him this right is to deny him equal protection of the law in violation of the state and federal constitutions. This identical question was raised and presented, discussed at length, and ruled against the defendant in State v. Aubuchon, 381 S.W.2d 807, 812–13 [1–4] (Mo.1964). It was raised again and the holding of Aubuchon, supra, was followed in State v. Bibbs, 461 S.W.2d 755, 759 [4] (Mo.1970). We reaffirm our decision in those cases and hold that the court did not err in overruling the motion to take depositions.

The next four points briefed are closely allied and may be considered together. The first three are that the court erred in excusing for cause members of the panel from which the trial jury was to be selected those persons who had expressed mere general objections to or conscientious scruples against capital punishment, because (1) the exclusion of these persons denied him the right to trial by an impartial jury as held in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); and (2) it " * * * systematically excludes those persons who are * * * of the Negro race."

■ It was explicitly held in *Witherspoon* that that decision did not affect the validity of any sentence other than one of death. This court held in State v. Adams, 497 S.W.2d 147, 153 [4] (1973) that the *Witherspoon* holding does not govern where the jury has not imposed the death penalty. See also: Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L. Ed.2d 797 (1968). The above cases are controlling in this case where the death penalty was not assessed by the jury. The assertion that to excuse persons who have scruples against the death penalty is sys-

tematically to exclude those prospective jurors who are Negro, does not prove itself and it is not supported by the record in this case.

■ The last of these four allied points is that the court erred " * * * in not permitting defendant * * * to interrogate all of the [prospective jurors] on * * * their ability to impose punishment under the laws of * * * Missouri." It is far from clear what defendant's contention is in this point, but as we understand it from the three lines of printed argument devoted to this point, his complaint is that the court interrupted him too many times during voir dire examination relative to punishment—so many times, he says, as to cause him not to reach some veniremen with this examination. We have carefully examined the record of the voir dire examination. It does not support defendant's contention.

The next two points briefed are combined in the printed argument portion of defendant's brief. We will consider them together. They are that the court erred in (1) admitting in evidence items of clothing of deceased, Shivers, because: (a) the clothing was not identified as having been worn by deceased at the time of the shooting, and (b) the clothing was offered in evidence solely to inflame the minds of the jurors and was highly prejudicial to defendant; and (2) admitting the testimony of a criminalist from the police department laboratory describing the location of bullet holes in the clothing, because it also was inflammatory and prejudicial to defendant.

The record shows that the clothing admitted in evidence was identified by witness Pool as the jacket and shirt worn by deceased at the time he was shot. Defendant refers to the clothing as being blood-stained and having three holes which a police department witness described as being bullet holes. However, defendant does not attempt to describe the blood stains or

1. References to statutes are to RSMo 1969 and V.A.M.S. References to rules are to Supreme Court Rules and V.A.M.R.

demonstrate how they or the bullet holes possibly could have inflamed the minds of the jurors.

■ Whether to admit or deny admission in evidence of such articles of clothing is a matter within the sound discretion of the trial judge. State v. Evans, 406 S. W.2d 612, 617 [6] (Mo.1966). We find no abuse of discretion.

■ Defendant also contends that the admission in evidence and the exhibition of these articles to the jury was error because there was other evidence of the location and nature of the wounds and no dispute as to any fact these exhibits would show. The fact that there was evidence of all of the material facts these exhibits would show, and no dispute as to those facts, does not render the exhibits inadmissible. Such clothing articles themselves will give a much clearer impression than any oral description could possibly convey. These articles corroborated the testimony of the state's witnesses that the defendant fired three shots at deceased at point blank range, all of which struck deceased in the upper portion of his body (in the chest and arms) while he was in the act of getting up from a sitting position. As pointed out in State v. Evans, supra, 1. c. 617, the state should not in this connection be unduly limited in the quantum of its proof since it has the burden of proving guilt beyond a reasonable doubt. State v. Brandt, 467 S. W.2d 948, 952 (Mo.1971). The court did not err in admitting these exhibits in evidence.

■ There was no objection to any part of the brief testimony of the witness from the police department laboratory; therefore, the claim of error in the admission of her testimony is not preserved for review and will not be considered.

■ Defendant's next point is that the court erred in admitting in evidence a .38 caliber revolver, fully loaded with five live bullets, found by the police on the floor behind where deceased had been sitting at his desk. The gun was identified as belonging to deceased. One of the photographs admitted in evidence showed a revolver lying on the floor where this exhibit was found. The state offered the revolver, the live cartridges found in it, and identified its owner to account for its presence in the picture; and, in anticipation of a claim by defendant that he had fired in self-defense, to show that it had not been fired. Defendant's objection to this evidence was that the weapon and the cartridges were not connected with the crime, had no probative value, and that its introduction " * * * tends to be inflammatory and prejudicial to the defendant."

Again, the admission of such demonstrative evidence is largely within the sound discretion of the trial judge. State v. Evans, supra. In this case, the murder weapon was not available for introduction in evidence. A picture which incidentally showed a revolver on the floor was seen by the jury. Without an identification of the pictured revolver, the jury might well believe it was the murder weapon and wonder why the state had not produced it. At least, the trial judge thought that in these circumstances some explanation of the pictured weapon was in order. Only by showing the jury the actual weapon appearing in the picture and identifying it as deceased's could the state have any reason to believe the jury understood it was not the murder weapon. The state argues that having thus established the revolver's ownership, it was reasonable to assume that it might well be faced with a claim by defendant that deceased had drawn the revolver and fired at him and that defendant shot in self-defense. Hence, the state says, it offered the live cartridges to show the weapon had not been fired. In these circumstances the trial judge did not abuse his discretion in admitting in evidence the deceased's revolver and the cartridges. Moreover, we fail to see how the admission of these items, if error, could have been prejudicial to defendant.

■ Defendant next claims error in the admission in evidence of a photograph of the body of deceased lying in the morgue, on the grounds that it was offered to inflame the minds of the jury and was therefore prejudicial to defendant. The picture, a black and white, was offered and used by the state to identify the body depicted as that of James Shivers and to show that it was his body removed from Jim's Service Station, taken to the hospital, and then delivered to the morgue, and the same as that upon which an autopsy was thereafter performed.

The photograph served to trace and account for the body from the scene of the murder to the doctor who performed the autopsy and to identify the body upon which the autopsy was performed as that of James Shivers. It also served to show the location of wounds, corroborate and clarify the testimony of witnesses and enabled the jury to understand the evidence better. It was relevant for these purposes, and was admissible in evidence even if it were inflammatory, a description not supported by the record. State v. Crow, 486 S.W.2d 248, 255 [16] (Mo.1972).

Defendant next claims error in overruling his objections to portions of the state's closing argument to the jury. Defendant objected to a statement by counsel for the state that the witness Purtis Pool had described defendant as having gold teeth, stating as his grounds that that there was no such testimony. The difficulty with this part of his point is that the witness Pool did so testify, on cross-examination. Hence, the court did not err in overruling the objection to the argument.

In describing the beginning of the events leading to the shooting, counsel for the state said that while Jim Shivers was seated at his desk talking to Purtis Pool "[t]wo young punks enter[ed]" the service station. Within a matter of seconds, counsel said "These two *things* entered this service station." (emphasis supplied) Defendant objected to the use of the word

"punks" as being "inflammatory and prejudicial," but made no objection then (as he does now) to the use of the word "things." His point on appeal is not only that this argument was inflammatory and prejudicial, but also that it denied him due process of law in violation of the fourth and fourteenth amendments to the U. S. Constitution. We will not further notice this claim of violation of constitutional rights because it is not preserved for review since it was not brought to the attention of the trial court as a part of his objection and was not mentioned as one of the grounds of his after trial motion. Nor will we refer again to his contention about use of the word "things," because it is not preserved for review.

■ We note that the court did not rule on defendant's objection to the state's use of the word "punks," but for the purpose of our decision we will assume that the objection was overruled. The state's characterization of defendant as a "young punk" was unnecessary and intemperate, but we have the view that, in context, it was not of such nature as to influence the jury or their verdict. The control of argument as well as determining whether it improperly influenced a jury must be, and is, left to a large extent to the sound discretion of the trial judge. State v. Kelton, 299 S.W.2d 493, 496 [5, 6] (Mo.1957); State v. Harris, 351 S.W.2d 713, 716 [1–4] (Mo.1961). The court did not abuse its discretion in this instance.

■ The next point briefed is that the court erred " * * * in allowing the state to cross-examine by going into matters beyond the scope of direct examination of defendant * * *." The quoted point is substantially the same as defendant's assignment of error in his motion for new trial. It is not sufficiently specific to preserve anything for review. State v. Kelton, 299 S.W.2d 493, 496 [4] (Mo. 1957). Defendant testified on direct examination that on the date and at the hour of this murder he was in Memphis, Ten-

nessee, some 300 miles south of St. Louis. The cross-examination to which defendant refers (we learn from his argument) was directed toward attacking his credibility by showing inconsistencies and lack of knowledge as to when he left St. Louis, his method of transportation, when he arrived in Memphis, and where in that city he was located and with whom on the day in question. This cross-examination clearly pertained to a matter referred to in his examination in chief and therefore was proper. Section 546.260; State v. Christian, 245 S. W.2d 895, 899 [5] (Mo.1952); State v. Harvey, 449 S.W.2d 649, 652 [2] (Mo. 1970).

Defendant's last point is that the court erred in permitting the witness Purtis Pool to identify him in court as the man who shot and killed James Shivers, because Pool's identification was based on a lineup and on photographs shown him by the police, both of which " * * * were necessarily suggestive and conducive to [irreparable] mistaken identification * * *." In support of his point he cites United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

Defendant filed a motion to suppress identification testimony by Pool for the reason that such testimony would be the result of procedures employed by the police which improperly and unfairly suggested the selection of a photograph of defendant, and the selection of defendant in a lineup, as the man who killed Shivers. The motion was heard and overruled before trial.

■ The only evidence presented by defendant in support of the motion was the testimony of Purtis Pool. His testimony, in addition to that describing the circumstances of the shooting, was that while he was in the hospital recovering from his gunshot wound the police brought him seven photographs from which he selected one of defendant as the killer. There is no evidence that the procedures employed by the police in any manner suggested to Pool his selection of the picture of defendant. He testified that there were two lineups, both on the same day; that there were five Negroes of different height and color in the first lineup, but defendant was not among them; that there were four in the second lineup and he identified defendant by his knowledge of his face, his height and lighter color; that he " * * * never forget[s] a face once * * * close to it"; that there is " * * * no possibility [he] could be mistaken in [his] identification"; that the officers said nothing to him about the lineups before or after they were conducted, except to tell him that they wanted him to see some men in a lineup and, after he had identified defendant in the second lineup, to ask him if he was sure the man he identified was in fact the killer. There is nothing in the record to indicate improper or unfair suggestive procedures employed by the police and nothing to indicate that the in-court identification was the result of anything but what Pool saw and observed at the time of the crime. He had a good opportunity to see defendant's face in close quarters when defendant pointed the gun and fired at Shivers, and had a close-up view of his face while struggling with him over the gun as well as while defendant was backing toward and out of the door. For these reasons, the court did not err in overruling the motion to suppress or in permitting Pool to identify defendant in court as the killer. State v. Parker, 458 S.W.2d 241, 243 [2] (Mo.1970); State v. Everly, 430 S.W.2d 156, 157 [2] (Mo. 1968).

The judgment is affirmed.

All of the Judges concur.