STATE of Missouri, Plaintiff-Respondent,

v.

Robert Lee MARTIN,
Defendant-Appellant.

No. 36210.

Missouri Court of Appeals,
St. Louis District,
Division One.

Nov. 4, 1975.

Motion for Rehearing or Transfer
Denied Dec. 10, 1975.

Charles D. Kitchin, Public Defender, John F. Bauer, James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, II, Timothy J. Verhagen, Asst. Attys. Gen., Jefferson City, J. Brendan Ryan, Circuit Atty., J. Paul Allred, James A. Roche, Jr., Asst. Circuit Attys., St. Louis, for plaintiff-respondent.

WEIER, Presiding Judge.

Upon trial for a charge of murder in the first degree, defendant Robert Lee Martin was determined to be guilty of second degree murder and the jury assessed his punishment at twenty years imprisonment. He now appeals from the judgment and sentence imposed in accordance with this verdict.

Facts favorable to the verdict indicated that on the evening of August 14, 1973 at approximately 8:30 p. m. the victim, Paul Adam Bruemmer, age 60 years, was walking on the sidewalk in the 5100 block of Delmar Avenue, St. Louis, Missouri. He was accosted by the defendant and another young man, Donnie Ray Pool, and was requested to go to a nearby liquor store and buy some wine. According to an oral statement made to the police by the defendant, the victim told the defendant that he would go and for him to come with him. Then, according to defendant Martin, the victim swung his hand at him with a knife, cutting the defendant on the arm and again on the chest. Defendant then stated that he went back to his front yard on Delmar, discussed it with some friends and then decided he would go back and catch up with the victim; that the victim turned around and swung at him; and he hit the victim in the face two times, knocking him down. He then proceeded to kick him a few times, he doesn't know how many, and then defend-

ant left. Prior to leaving, he removed the victim's wallet from his pocket. According to eye witnesses, however, defendant repeatedly kicked the victim five or six times and his companion, Donnie Ray Pool, beat the victim about the head with a steel rod or metal object, kicked him in the side of the face, and jumped up and down on him with his feet. As a result of the brutal beating, Mr. Bruemmer received multiple fractures of the face and skull. He had lost consciousness which he never regained. He died on September 30, 1973 after many operations as a result of complications arising from his long hospitalization and unconscious state.

Defendant testified in his own behalf at the trial, admitted to taking a swing at the victim but described his companion Pool as being the real attacker who hit the victim in the face, stomped him and kicked him. The defendant further assured the jury that he attempted to restrain his companion Pool from continuing to beat the man but was unsuccessful.

In his first point on appeal, the defendant asserts that the trial court erred in overruling his objection to the assistant circuit attorney's questioning of the witness Deborah Carter concerning what she had told the circuit attorney earlier in his office. Defendant complains of this action by the state as constituting an impeachment of its own witness in that it lacked an adequate foundation. We cannot agree.

The circumstances giving rise to this allegation were a series of questions on direct examination about Miss Carter's identification of the defendant to the police. Miss Carter had identified the boys only as "Creature" (the defendant) and "Charles" (his companion Pool) to the police in the initial interview and not until later identified the defendant as being "Creature". The alleged impeaching questions occurred when the assistant circuit attorney was attempting to ascertain why Miss Carter had not immediately identified the defendant as one of the boys she had seen beating the

victim. The attorney referred to a prior statement that she had made in his office, explaining that she had been afraid to tell the police the defendant's name. The trial colloquy that occurred, however, amply demonstrates that the young girl was confused and did not understand the assistant circuit attorney's question. No attempt at impeachment was made. The state's attorney did not wish to attack Miss Carter's testimony, nor was he trying to bolster it; rather he was attempting to refresh the witness's memory and clarify his own questions so that she could answer. The question of permitting the refreshing of a witness's memory is determined by the circumstances of the particular case and is clearly within the discretion of the trial court, reviewable only upon abuse. *State v. Bradley,* 361 Mo. 267, 234 S.W.2d 556, 560[10] (1950). *See also State v. McKinney,* 475 S.W.2d 51, 54[3] (Mo.1971); *State v. Franklin,* 526 S.W.2d 86, 91[13] (Mo.App.1975).

Defendant also submits as error the admission into evidence of the victim's bloody clothing he was wearing during the beating. Defendant contends that the clothing was irrelevant and used only to inflame the passions of the jurors, thus constituting reversible error. The admissibility of such demonstrative evidence, however, has long been held to be a matter within the discretion of the trial judge. *State v. Wallace,* 504 S.W.2d 67, 71[5] (Mo. 1973); *State v. McRoberts,* 485 S.W.2d 70, 72[1] (Mo.1972). Although the defendant correctly asserts that a victim's clothing can be properly admitted only if it has some probative value to the jurors, *State v. Swinburne,* 324 S.W.2d 746, 752[8] (Mo. banc 1959); *State v. Long,* 336 Mo. 630, 80 S.W.2d 154, 160[9] (1935), the defendant is wrong in asserting that the admission of the clothing in this case constitutes reversible error. To be admissible, the victim's clothing need only "establish *any* fact at issue or * * * tend to throw light on the controversy and aid the jury in *any* way in arriving at a correct verdict * * *." (Emphasis added.) *State v. Long, supra,* at

160. Much testimony was directed to the issue of the severity of the beating the victim received, and although the amount of blood on his clothing is not by itself proof, we cannot say it was entirely without some probative value. Corroborating other testimony is sufficient reason to admit such demonstrative evidence. *State v. Wallace, supra,* 504 S.W.2d 67, 71[6] (Mo.1973); *State v. Brandt,* 467 S.W.2d 948, 951[4] (Mo.1971). Furthermore, it has been said that the state should not be limited in the quantum of proof since it has the burden of proving guilt beyond a reasonable doubt. *State v. Wallace, supra* at 71. Here, no undue emphasis was placed on the clothing so as to inflame the passions of the jury.

In defendant's third point on appeal, he alleges error by the trial court in sustaining the motion to strike the testimony of Donnie Ray Pool and in instructing the jury to disregard his testimony. Defendant contends that the court's action invaded the province of the jury in considering the credibility of the witnesses and evidence favorable to the defendant. We agree in part.

Evidence received may be stricken only as a matter of right and not at the discretion of the court. 75 Am.Jur.2d, Trial, § 179, p. 265. This is for the reason that it is within the province of the jury and not the court to determine whether any or all of a witness's testimony is to be believed. *State v. Whipkey,* 358 Mo. 563, 215 S.W.2d 492, 494[2] (1948). Here, the state's purported reason for striking the testimony of Donnie Ray Pool was because it did not wish to be responsible for the believability of it. This motion came seven witnesses and one day after Pool had testified. The state attributed its untimeliness to the fact that it did not know that Donnie Ray Pool was the other boy involved in the beating, known as "Charles" to Miss Deborah Carter, until she was recalled to the stand and asked by the defense counsel if Donnie Ray Pool was, in fact, the "Charles" she referred

to. Thus, the state urges that the trial court was correct in sustaining their motion to strike because of the doctrine against using false testimony. We, however, fail to see the applicability of the doctrine against the knowing use of *false* testimony in this situation. There was no proof of false or perjured testimony by Donnie Ray Pool merely because Miss Carter identified him as a participant. Instead, the resolution of the conflicting testimony became an issue of credibility. It is well established that the determination of credibility of witnesses is solely for the jury in a criminal proceeding. *State v. Brager,* 497 S.W.2d 181, 182[2] (Mo.1973); *State v. Dodson,* 490 S.W.2d 92, 95[6] (Mo.1973); *State v. Morris,* 518 S.W.2d 79, 81[5] (Mo.App.1974). Furthermore, the state ought not to have been concerned for being held responsible for the veracity of Donnie Ray Pool since a party is not bound to the testimony of his witness where the same party offers other evidence from which a contrary inference could be drawn. *Hartz v. Heimos,* 352 S.W.2d 596, 602[4] (Mo.1962); *Hancock v. Light,* 435 S.W.2d 695, 700[8] (Mo.App.1968).

The jury heard Deborah Carter identify Donnie Ray Pool as the other attacker. It was their duty to weigh the testimony previously given by Pool. *See State v. Nimrod,* 484 S.W.2d 475, 479[4] (Mo.1972). The state might also have brought out the credibility problem of Pool in its closing argument, but striking his entire testimony was improper merely because the witness had been subsequently discredited or contradicted. *See Kansas City v. Jones Store Co.,* 325 Mo. 226, 28 S.W.2d 1008, 1015[20] (banc 1930); *Reed v. Prudential Ins. Co.,* 229 Mo. App. 90, 73 S.W.2d 1027, 1033[11] (1934).

 Error in striking out testimony, however, is not reversible error unless it is prejudicial. 75 Am.Jur.2d, Trial, § 184, p. 269. Error in a criminal case is presumed to be prejudicial, but this presumption may be overcome by the facts and circumstances of the particular case. *State v. Walker,* 484 S.W.2d 284, 286[4] (Mo.1972); *State v. Spencer,* 472 S.W.2d 404, 405[1] (Mo.1971). Here, the defendant argues he was prejudiced by the erroneous striking of Pool's testimony, since Pool stated the defendant only hit the victim with his fists and that no one kicked or stomped him. But the stricken testimony was not favorable to the defendant. In his testimony, Pool tried to cast all the blame for the assault on defendant rather than on himself. He testified defendant hit the victim twice and the victim fell. The victim tried to get up and defendant hit him again in the face. Pool and another person pulled defendant off the victim and defendant returned again to hit him. Then Pool and his companion ran. Without the testimony of Pool, the defendant's version that Pool and not the defendant initiated the beating is undisputed. Certainly the effect of striking the testimony and instructing the jurors to disregard it helped the defendant. The evidence from Pool was adverse enough apparently to elicit the statement from defendant's attorney after the state moved to strike Pool's testimony, "I'll agree to said motion by the State". Later he objected when the state failed to include a motion for judgment of acquittal. Clearly, defendant cannot be heard to complain about error in his favor and against the state. *State v. Foster,* 490 S.W.2d 662, 663[2] (Mo.App.1973).

 The fourth point raised on appeal by the defendant is that the trial court erred in overruling the assistant circuit attorney's cross-examination of the defendant, alleging the questions were beyond the scope of the direct examination. The defendant's testimony was confined to the events of August 14, 1973 and the beating incident only. On cross-examination the state was permitted to inquire as to certain events occurring on August 15, 1973, events surrounding his arrest and his interrogation by the police. On this issue it is well established that although the defendant is liable to cross-examination only as to matters referred to in his examination in chief, he is

subject to impeachment in a like manner as any other witness. *State v. Beishir,* 332 S.W.2d 898, 901[1] (Mo.1960); *State v. Robinson,* 344 Mo. 1094, 130 S.W.2d 530, 531[1] (1939).

 The defendant testified in his own behalf on all the events surrounding the assault. This testimony contradicted prior statements given to police authorities, who had testified for the state about defendant's statements upon his arrest. It is thus apparent that the state confined its examination to the impeachment process of defendant's prior inconsistent statements to the police. Additionally, we recognize that the trial court is invested with discretion in determining the extent of cross-examination. *State v. Mitchell,* 491 S.W.2d 292, 296[5] (Mo. banc 1973). We find that the court did not abuse that discretion.

 The final point raised on appeal was that the trial court erred in admitting into evidence a bloodied flashlight found near the scene of the beating. Defendant asserts that because a "blood-grouping" test was not performed the flashlight was irrelevant because it did not tend to prove or disprove any fact in issue. But testimony was introduced by the state that the victim was beaten with a metal tubular object. As we noted above, it is within the trial court's discretion to determine the materiality and relevance of evidence. *State v. Evans,* 406 S.W.2d 612, 617[6] (Mo.1966). In light of evidence that the victim was hit with a metal object, we cannot say that the admission of a bloodied flashlight found near the victim's unconscious body might not be relevant to the fatal beating. *See* *State v. Hopkins,* 278 Mo. 388, 213 S.W. 126, 128[5] (1919).

Finding no reversible error in the defendant's trial, we affirm the judgment and sentence.

DOWD and RENDLEN, JJ., concur.