**STATE of Missouri, Respondent,**

v.

**Dale HIRSACK, Appellant.**

**No. 55049.**

Supreme Court of Missouri, Division No. 2.

April 12, 1971.

544

John C. Danforth, Atty. Gen., John W. Cowden, Asst. Atty. Gen., Jefferson City, for respondent.

B. Daniel Simon, Columbia, for appellant.

BARRETT, Commissioner.

Dale Hirsack, age 42, with a long prior criminal record, has been found guilty of robbery with a dangerous weapon and sentenced to ten years' imprisonment. Despite his expressed gratitude for the light punishment he has perfected an appeal to this court. He does not question the sufficiency of the evidence and it is sufficient to say that about 4 o'clock on October 31, 1968, he entered the Red Barn Pantry and at gun point held up Barbara Bates, age 18, and Ron Snider and took from them $83.80. Two questions have been briefed and argued here on his behalf, one relating to a certain juror and the other relating to a remark of the trial judge to the jury. (It may be noted in passing that present court-appointed counsel has represented appellant on this appeal only.)

The first assignment of error has to do with the failure on voir dire of Juror Michael A. Pistone to reveal the fact that some months prior to this trial his father, a bartender, had been wounded by a gunman in a robbery and subsequently died as a result of the wound. He asserts that by reason of the juror's failure to reveal the circumstances of his father's death he was denied a valid challenge for cause and was thus compelled to exercise a peremptory challenge. In his brief appellant concedes that there is no proof of Juror Pistone's prejudice and that he relies on the "mere tragedy itself" which he says "raises doubts as to Mr. Pistone's qualifications." In this connection his lawyer says "In summary, it must be admitted that we have no information available other than that venireman Michael A. Pistone withheld the information that his father had recently been a critically wounded victim of an armed robbery." The problem arose in this background. Defendant's counsel made this general inquiry of the jury panel, "Now is there any *member of this panel that himself or some immediate member of the family* has been either robbed, burglarized or raped or any major injury or crime? I am not talking about police court matters. I am not speaking now of vehicular rear-end collisions. I am not talking about neighborhood fights or things of that nature or dog bites, but any serious offense involving *either yourself or a member of your family*." (Emphasis supplied.)

In response to this general inquiry three jurors responded, Mr. Duensing, Mr. Kent and Mr. Beach. Mr. Duensing said, "I was in a holdup at the company I work for about seven or eight years ago." The robbers were not apprehended and Mr. Duensing responded that he did not think the experience prejudiced him, he said, "I don't think so. I don't know why it would affect me." Mr. Kent said, "I was held up in the early part of January * * * on the Metro, by two armed gunmen. They have been caught but I never attended the proceedings, but I am positively sure that it would make no difference in my function down here, what took place in January." Defendant's counsel responded, "Thank you very much." Mr. Beach said,

"I have been held up and robbed. * * * I was held up on a cab. I drive a cab. A passenger held me up one time. * * * About three years ago." In response to the question whether his having been the victim of a robbery would make it difficult to fairly and impartially try the case Mr. Beach said, "No, I don't think so." Defense counsel, incidentally, a well-known lawyer and former prosecuting attorney of Jackson County, then said, "Any other person? I take it by your silence that *neither you nor any immediate members of your family* have been involved in major offenses." Then counsel directed another general question to the panel as to connections with law enforcement officers and Mr. Beach gave the information that his son was a Kansas City policeman. After this response defense counsel, further defining "immediate member of their family," made this inquiry, "Anyone else that has an *immediate member of their family, son-in-law, brother-in-law*, that sort of thing, who has been with any of these police agencies * * *." In questioning the panel as to any possible connection with lawyers Mr. Pistone told of his acquaintance with Bill Teasdale (a member of some firm). When the court directed counsel to begin "asking individual questions," it developed that Mr. Pistone, employed by Webco Bearings for 13 years as a salesman, was married and had five children. The court then directed the jury's attention to the fact that twelve of their number would be chosen from the panel of thirty-four and they were excused while the challenges were made. The defendant peremptorily challenged twelve jurors including Mr. Duensing, Mr. Kent, Mr. Beach and Mr. Pistone.

■ There is no doubt or question as to the rule upon which appellant relies, aside from the statutory grounds of challenges for cause he is entitled to a qualified panel and, as in this case, may not be compelled to exercise peremptory challenges to rid the panel of disqualified jurors (State v. DeClue, Mo., 400 S.W.2d 50) and "preju-dice of a juror, concealed on examination and discovered only after verdict, is ground for a new trial." State v. Kirkpatrick, Mo., 428 S.W.2d 513, 516. The governing rules need not be considered in depth, that has most recently been done in the two noted cases, the difficulty is their applicability to the particular circumstances of this record. The first problem, and it need not be explored extensively, is the meaning of "immediate member of their family," particularly in the context of this record in which the three responding jurors all related personal experiences with robberies—at least one of them recently. But of greater force and significance here is the fact that when jurors Duensing, Kent and Beach affirmatively responded to counsel's inquiry there was no attempt to challenge them for cause. And from counsel's continued questioning as to whether their experiences would prejudice them as jurors it would appear that he thought it necessary to establish that they were in fact prejudiced and therefore disqualified before he was entitled to challenge them for cause. Further and more specific questioning might have compelled Juror Pistone to reveal his father's experience and his personal tragedy and certainly there would have been no impropriety in the court's excusing him, but having failed to assert challenges for cause to the other three jurors it does not appear upon this record that Mr. Pistone was disqualified as a matter of law and that merely because the appellant was compelled in the circumstances to exercise a peremptory challenge that he is entitled to a new trial. State v. Harris, Mo., 425 S.W.2d 148; State v. Jones, Mo., 384 S.W.2d 554. Applicable to the particular circumstances of this record, certainly by analogy, is the rule that "in the absence of such a request or a challenge (for cause) of Juror Gage there is nothing before us for review." State v. Fields, Mo., 442 S.W.2d 30, 35.

■ The appellant has a second point directed to a remark of the court to the jury. According to the record the jury

started its deliberation at 3:42 p. m. At 5:30 the jury returned to the courtroom and the court in considering whether the jury should deliberate further or whether they would prefer to first have dinner, made the statement "you understand you don't assess any punishment here; all you have got to return is a guilty or not guilty verdict." The appellant asserts that this remark "gave rise to the obvious inference that the court felt the defendant was guilty" and therefore it is said there was manifest, plain error. Of course, under the forms of verdict it should have been obvious to the jury that they had no part in fixing the punishment. In addition during defense counsel's summation there was an objection by the state's attorney to his argument and in ruling the court said, "Let me say this to the jury, that under the instructions they are not to assess the punishment." There was then no objection to the court's statement and, admittedly, there was no objection on the second occasion of the court's second statement, a true and correct statement of law and fact, and there was no assignment of error in the appellant's motion for a new trial directed to this or any other remark by the court. The court's remark was not manifestly inflammatory or prejudicial and in the circumstances there is no obvious miscarriage of justice demanding as "plain error" (Rule 27.20(c), V.A.M.R.) the granting of a new trial. State v. Whitaker, Mo., 275 S.W.2d 316, 321; State v. Taylor, Mo., 408 S.W.2d 8; State v. Carpenter, Mo., 436 S.W.2d 748.

Accordingly, the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

DONNELLY, P. J., and MORGAN, J., concur.

FINCH, J., concurs in separate concurring opinion filed.

FINCH, Judge (concurring).

I concur in the principal opinion with the understanding that the actual basis on which defendant's first assignment of error on appeal is overruled is that the record as presented to us does not show that juror Pistone was disqualified as a matter of law.

The fact that Pistone's father had been shot in a robbery was not in and of itself a basis for challenging him for cause. Even if he had spoken up on the voir dire and told of the incident, that alone would not have disqualified him. Only if further questioning had disclosed that he was prejudiced as a result and could not render a fair and impartial verdict would defendant have been entitled to challenge him for cause.

Even though this did not occur on the voir dire (Pistone not having mentioned the incident), there still was an opportunity for defendant on the hearing on the motion for new trial to show actual prejudice on Pistone's part sufficient to disqualify him as a juror. See Beggs v. Universal C. I. T. Credit Corp., Mo., 387 S.W. 2d 499, and Rinkenbaugh v. Chicago, Rock Island & Pacific R. Co., Mo., 446 S.W.2d 623. If such testimony had been offered on the motion for new trial, the trial court would have determined (the same as he would have done on voir dire) whether in his judgment and discretion the evidence disclosed that the juror was prejudiced. Since there has been no showing on the record presented to us of any prejudice on the part of juror Pistone, no basis has been shown for challenging him for cause and defendant is not entitled to a new trial on this basis.