STATE of Missouri, Plaintiff-Respondent,

v.

Donnell LEE, Defendant-Appellant.

No. 38103.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 12, 1977.

Robert C. Babione, Public Defender, Joseph Webb, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, J. Michael Davis, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., James F. Booth, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

PER CURIAM.

This is an appeal by defendant-appellant, Donnell Lee [1], from a judgment of conviction entered by the circuit court of the City of St. Louis on May 3, 1976, whereby appellant was sentenced to thirty years in the Department of Corrections for the offense of assault with intent to maim with malice. § 559.180, RSMo. Appellant having been found guilty by a jury and the court having found that appellant came within the provisions of the Second Offender Act, § 556.280, the court imposed sentence. Defendant-appellant appeals. We affirm.

Since the appellant does not, on this appeal, question the sufficiency of the evidence, only those facts necessary for a disposition of the points raised will be stated. For reversal and remand appellant urges that the trial court erred (1) in admitting two photographs of the scene of the offense because they had an inflammatory and prejudicial effect on the jury, (2) in admitting a state exhibit—a hatchet—found at the scene because it had a prejudicial effect on the jury and overrode any relevancy or probative value it may have had, and (3) in refusing to give defendant's offered instruction of assault with intent to maim without malice aforethought.

We find none of the appellant's points to be meritorious and hence, for reasons hereinafter stated, affirm the judgment of conviction.

The jury could reasonably find the following facts. Miss Doris Duckett had known the appellant, Donnell Lee, for approximately thirteen years and had two children by him. She and her children lived in the City of St. Louis. On September 2, 1975, she and her daughter were examining two of three checks she had received when defendant came to the house. The evidence implied that when he left or "disappeared" one of the checks in the amount of $172.00 and a "Master Charge Account" were "missing and unaccounted for." Some two months later—"[i]t was the week of No-

vember 1," 1975—Miss Duckett heard from Mr. Lee by telephone. "He asked me if he could come and stay at my house a few days." She permitted him to come and stay. On Tuesday of that week, appellant asked Miss Duckett if she had called the police "on him." She answered that ". . . they sent a police officer to my house to identify some friends of his who had cashed my check and was trying to use my Master Charge." The next day he left the house about 10:00 a. m. and returned about 10:00 p. m. Miss Duckett was under medication to help her sleep and when appellant returned home she was in the kitchen. Appellant came into the kitchen, ". . . opened my basement door and sat down at the kitchen table." After a little while, appellant stated that he had come to kill her and ". . . told me to pray." The medication began to "work on me" and Miss Duckett dozed. After that the appellant ". . . jumped across [the] table and hit me in the chest . . . he hit me in the right jaw and knocked me out of the chair." After he knocked her out of the chair, he hit her on the "left side of the face." He then started to drag her down the basement steps. "He picked me up off the floor and drug me from the basement." During that time he picked up the hatchet off the cabinet which [was] directly behind the basement door." He propped her up against the cabinet in a sitting position and with an ice pick he took out of his pocket "began stabbing me in the chest."

He stabbed her three times. After that he stood her up and ". . . by that time he had two ice picks, one in each hand and and he just stabbed me in' the side, in between the ribs and on side of the stomach." She was bleeding from the face and ". . . I started bleeding from the wounds in the chest." Afterwards Mr. Lee placed the hatchet back up on a wall cabinet; Miss Duckett went into the bathroom and put her bloody robe in the tub and turned the water on. A little later, Miss Duckett's daughter, Blanche Jones, came

---

1. Also known as Donnell Holmes Lee, Jr.

home about midnight. When she arrived the appellant told her that "him and mother were fighting," and, after noticing that her mother ". . . was stabbed in the chest and there was blood running down [her] forehead," Miss Jones and a neighbor's brother took her to the hospital.[2] Miss Jones called the police and a neighbor, Rodney Richardson. When Mr. Richardson arrived, Miss Duckett ". . . was laying their [sic] and blood was coming out of her mouth and she was bleeding from her head." Miss Jones also examined the bathroom and saw her mother's robe and housecoat and the appellant's sweatshirt in the tub. That night the appellant left the house and ". . . carried clothes with him in a suitcase."

In due time, Officers James Burgoon and Laird Kelly arrived at the scene. Officer Burgoon observed several people gathered around an automobile and saw Miss Duckett "laying half in and half out of the car." The people were attempting to put her in the car. They went into the house and observed the kitchen in disarray and the floor full of blood. Officer Kelly saw Miss Duckett bleeding from the head. The people were concerned that she get to a hospital. Officer Kelly entered the house and also found "blood splattered on the floor." From the kitchen he seized from the top of the cabinet a hatchet with a wooden handle. He also observed ". . . some clothing in the bathtub that had water in it, that was wet and red." On cross-examination defendant counsel inquired where the officer recovered the hatchet.

The medical records indicated that Miss Duckett suffered " '[m]ultiple stab wounds with ice pick to right chest' " and lacerations of the scalp.

According to the record, Miss Duckett did not see appellant again until early in January 1976. He was on her front porch, and when the doorbell rang she "peeped through the draperies." Miss Jones was at home. Miss Duckett ran upstairs and told her daughter that the appellant was at the

door. The daughter called the police and the neighbor, Mr. Rodney Richardson. When Mr. Richardson was called he "got a gun," loaded it and went up the street. He saw the appellant "kicking on the door." Richardson told him to put his hands up, but appellant replied with an obscenity. Richardson shot the gun once. After that appellant "put his hands in the air." When Officer Louis Clayton came to the house in response to the call, he arrested the appellant.

Defendant was charged in an amended information with a prior conviction and with assault with intent to maim with malice aforethought. Trial was held and the above facts were brought out. During the state's case, certain photographs were introduced as exhibits. Exhibit No. 3 was a picture of the pantry and the basement door where Mr. Lee dragged Miss Duckett. Exhibit No. 5 was a picture of the kitchen showing the cabinet. When Exhibit No. 3 was offered, defense counsel objected ". . . on the grounds that it [is] inflammatory and would cause a prejudicial effect on the jury. There has been sufficient evidence to show the kitchen layout. I think they are of no probative value at all." Counsel also contended that the picture showed that there was blood on the floor. The objection was overruled. When Exhibit No. 5 was offered, counsel objected to the admission but gave no specific reasons. This objection too was overruled.

During the direct examination of Officer Kelly, Exhibit No. 8—the hatchet which he seized—was offered and introduced into evidence over objection on the ground that there was no showing that it was connected in any way with the defendant.

The defendant did not testify but introduced certain preliminary hearing testimony of Miss Duckett through a court reporter.

During the conference on instructions, the appellant offered an instruction on assault with intent to maim without malice, MAI–CR 6.24, but the offer was refused.

2. Miss Duckett was treated and released the next day.

The jury was instructed on assault with intent to maim with malice and the jury found appellant guilty of that offense. In due time, after a motion for new trial was filed and overruled and allocution granted, appellant was sentenced.

On this appeal appellant contends that (1) the trial court erred in admitting the photographs—Exhibit Nos. 3 and 5—for the reason that they had an "inflammatory and prejudicial effect on the jury and offered no probative value;" (2) the trial court erred in admitting the hatchet—Exhibit No. 8—into evidence because it too had an "inflammatory and prejudicial effect on the jury that overrode any relevancy or probative value the exhibit may have offered;" and (3) the court erred in refusing to give offered Instruction A because there was sufficient evidence before the jury "to provide mitigating and extenuating facts to arguably show a lack of malice." [3]

Appellant argues that the photographs "displayed a large amount of what was apparently the victim's blood on the kitchen floor and table" which were offered for the purpose of inflaming the jury and hence unnecessarily prejudiced the defendant while "offering no probative or corroborative value." He also obliquely contends that, inasmuch as the victim identified him in court and testified as to the nature and extent of her injuries, "the only relevant matter surrounding the photograph[s] was to corroborate the victim's testimony that the assault took place in the kitchen of her home." Accordingly, he contends that the only purpose was to inflame the jury and prejudiced him to such an extent that the prejudice clearly overrode any relevancy or probative value of the photographs.

As to his second point he argues that there was no evidence to show that the hatchet was used as a weapon or that Miss Duckett was in any way injured by the hatchet. He argues that the hatchet was "in no way connected with the injuries sustained" by Miss Duckett; hence, the only purpose in admitting the hatchet was to inflame the jury "which created a prejudicial effect [on] the defendant."

On the third point appellant argues that there were sufficient facts to show a lack of malice so that the instruction as to the lesser offense should have been given and the issue submitted to the jury [4] because malice aforethought is "arguably" absent since there was no evidence "to show his thinking about the assault in advance." Rather, the proper analysis of the evidence indicates "nothing to show that the defendant's motive for the visit [in November] was anything other than companionship as indicated by the long and amorous relationship." Hence the jury should have been instructed on assault without malice so that the jury would have an opportunity to infer a lack of malice from these "mitigating and extenuating circumstances."

■ The first and second points raised by the appellant may be treated together since they are legally intertwined and the legal principles applicable thereto are applicable to both.

There are certain time-tested legal principles governing the admission of demonstrative evidence, including photographs. [5] The

---

**3.** Appellant's motion for new trial stated that the court erred in refusing to give Instruction A because evidence of a "long, intimate relationship between the defendant and the victim and the dispute over a check and credit card" provided sufficient mitigating and extenuating facts to "arguably" show a lack of malice.

**4.** Appellant argues that these facts were sufficient to show extenuating and mitigating circumstances: (1) Miss Duckett had known appellant for thirteen years and had two children by him, (2) some months before, Miss Duckett accused him of taking a check which belonged to her, (3) Miss Duckett's reason for granting him permission to live with her in November was to "get him in the house so I could turn him over to the police."

**5.** Our courts have not made fine distinctions concerning the admissibility of tangible objects such as a weapon, bullet, etc. and photographs depicting the scene of an offense or the body of a victim. The principles relating to the admissibility of such demonstrative evidence apply to both types of items.

principles relating to the admissibility of photographs or visual evidence are well settled.

■ 1. Demonstrative evidence is admissible if it tends to connect the accused with the offense, or to prove the identity of the victim, or to show the nature of the wound, or to throw any relevant light upon a material matter in issue. *State v. Moore,* 303 S.W.2d 60, 65 (Mo. banc 1957). As stated in *State v. Martin,* 530 S.W.2d 447, 450 (Mo.App.1975), relying on *State v. Long,* 336 Mo. 630, 80 S.W.2d 154, 160 (1935), "[t]o be admissible, the [demonstrative evidence] need only 'establish *any* fact at issue or * * * tend to throw light on the controversy and aid the jury in *any* way in arriving at a correct verdict * * *.'" And it is sufficient if the demonstrative evidence corroborates other testimony in the case.[6]

■ 2. It is not a valid objection that a witness has testified as to matters concerning the demonstrative evidence, especially photographs.[7]

■ 3. The admissibility of such evidence is a matter resting primarily within the wide discretion of the trial court.[8]

■ 4. Demonstrative evidence, especially photographs, is also admissible if it tends to corroborate the testimony of the state's witnesses because the state, having the burden of proving the defendant's guilt

beyond a reasonable doubt, should not be limited as to the quantum of its proof.[9]

■ 5. Photographs of the scene of an alleged crime are admissible if they depict the conditions and circumstances surrounding the alleged crime and aid the jury in throwing light on a material issue in the case. *State v. Rogers,* supra, 523 S.W.2d at 347. Photographs, too, are admissible if they tend to connect the accused with the offense, or prove the identity of the victim, or show the nature of the wound, or throw any light upon a material issue, or corroborate the testimony of the witnesses for the state, or refute the defense testimony.[10]

■ 6. A trial court, in the exercise of sound discretion, should deny the admission and exhibition of gruesome photographs to a jury if they do not tend to throw any relevant light upon a material issue, but it is not sufficient cause for their rejection if the sight of the pictures would tend to agitate the feelings of the jurors.[11]

■ 7. Photographs, even though inflammatory, are admissible if they tend to prove any material element of the state's case and corroborate the oral testimony of the state or refute the defense testimony. The photograph, if relevant, is not to be excluded unless the situation is "so unusual that the extent of prejudice overrides the relevancy and probative value of the photo." *State v. Jackson,* supra, 499 S.W.2d at 472.[12]

6. *State v. Martin,* supra, 530 S.W.2d at 450; *State v. Hudson,* 521 S.W.2d 43, 47 (Mo.App. 1975)—gun, shovel and hatchet.

7. *State v. Tyson,* 363 Mo. 1242, 258 S.W.2d 651, 654 (1953) cited in *State v. Moore,* supra, 303 S.W.2d at 65; *State v. Jackson,* 499 S.W.2d 467, 472 (Mo.1973).

8. *State v. Rogers,* 523 S.W.2d 344, 347 (Mo. App.1975); *State v. Brown,* 524 S.W.2d 188, 190 (Mo.App.1975).

9. *State v. Shawley,* 334 Mo. 352, 67 S.W.2d 74, 83 (Mo.1933); *State v. Moore,* supra, 303 S.W.2d at 65–66; *State v. Wallace,* 504 S.W.2d 67, 71 (Mo.1973), cert. den. 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 76; *State v. Evans,* 406

S.W.2d 612, 617 (Mo.1966)—clothing; *State v. Martin,* supra, 530 S.W.2d at 450.

10. *State v. Blair,* 531 S.W.2d 755, 761 (Mo.App. 1975); *State v. Jackson,* supra, 499 S.W.2d at 472.

11. *State v. Moore,* supra, 303 S.W.2d at 66.

12. *State v. Blair,* supra, 531 S.W.2d at 761— photo of victim; *State v. Frazier,* 522 S.W.2d 46, 49 (Mo.App.1975); *State v. Stewart,* 529 S.W.2d 182, 184 (Mo.App.1975)—victim lying in street in blood; *State v. Smith,* 485 S.W.2d 461, 468 (Mo.App.1972)—assault; *State v. Brown,* supra, 524 S.W.2d at 190; *State v. McClain,* 536 S.W.2d 45, 46 (Mo.App.1976)— photo of deceased.

Tested within all these legal principles, we cannot conclude that the trial court so abused its discretion (1) in admitting the photographs into evidence or (2) in admitting the hatchet into evidence.

■ We have viewed the photographs attached to the appellant's brief and do not find them gruesome or inflammatory. They show the scene of the assault and corroborate the oral testimony of Miss Duckett as to the events of that November evening. The "spots" of blood shown on the photographs could not have inflamed the minds of the jury any more than they were otherwise inflamed by the detailed testimony of the assault by Miss Duckett and her physical description by her daughter and Mr. Richardson. *State v. Jackson, supra,* 499 S.W.2d at 472. The situation was not so unusual that the extent of prejudice overrode the relevancy and probative value of the photographs. The photographs were of aid to the jury in arriving at a correct verdict and were admissible to corroborate the oral testimony presented by the state. The photographs were scenes where the offense occurred; both were described as fair and accurate representations. Under these circumstances there was no prejudicial error in the admission of the photographs.

■ Neither was there any prejudicial error in the admission of the hatchet. The admission of this evidence rested in the sound discretion of the trial court and we find no abuse. Although there was no direct testimony that Miss Duckett was struck by this object, she testified that while being dragged and before he struck her with the ice picks he picked up the hatchet "off the cabinet" and after the stabbing put it "up on the cabinet" in the kitchen where it was seized by Officer Kelly and identified at trial. The hatchet tended to throw light on the assault, aided the jury in arriving at a verdict and corroborated the oral testimony of Miss Duckett of the events surrounding the assault. The incident involving the hatchet was part of the continuing assault upon the victim. Again the situation was not so unusual, and no undue emphasis was placed on this exhibit, that the extent of prejudice overrode the relevancy and probative value of this exhibit.

Therefore, we find no prejudicial error in the admissions of Exhibit Nos. 3, 5 and 8—the photographs and the hatchet.

Neither do we find that the court erred in refusing to instruct on the lesser included offense—assault with intent to maim without malice.

■ There are many Missouri statutes proscribing assault under a wide variety of circumstances. The General Assembly has classified the various assaults and has determined that the more serious or aggravated the assault the more severe the punishment. Assault without malice under § 559.190 may be regarded as assault with intent to kill or do great bodily harm or to commit a felony, while assault with malice aforethought under § 559.180 may be viewed as an assault with intent to kill or maim by shooting, stabbing or by means of a deadly weapon or force likely to produce death or great bodily harm. While many decisions have stated that the essential ingredient of § 559.180 is "malice aforethought," upon closer examination the true distinction "lies in a general weighing together of all the facts and circumstances including the comparative strength and positions of the parties, the presence or absence of 'provocation' or justifying, mitigating, excusing or aggravating circumstances, the weapon or means or force employed, the manner in which the weapon or force was employed, the injury sustained, etc." Richardson, The Missouri Bar Committee Comments on Missouri Approved Criminal Instructions, Assault, p. 22–23 (1974); *State v. Webb,* 518 S.W.2d 317, 320–321 (Mo.App.1975); *State v. McCoy,* 530 S.W.2d 8, 10 (Mo.App.1975).

■ Whether an instruction on assault without malice is to be given, the controlling factor with respect to the submission of a lesser offense is whether the

facts in evidence are sufficient to arguably show a lack of an essential element of the higher degree of the offense. *State v. Howell,* 524 S.W.2d 11, 21 (Mo. banc 1975). And it is clear that an instruction on the lesser offense—assault without malice—is required only if there is evidence to support such a submission. *State v. Webb,* supra, 518 S.W.2d at 321; *State v. Lane,* 537 S.W.2d 569, 570 (Mo.App.1976).[13] Furthermore, the law presumes malice as a concomitant of an assault with a deadly weapon in the absence of countervailing circumstances. *State v. Webb,* supra, 518 S.W.2d at 321; *State v. Lane,* supra, 537 S.W.2d at 570.

▆▆▆ We conclude that under the evidence here the trial court did not err in refusing to give the offered instruction on assault without malice. The evidence shows that Miss Duckett was at her table when the appellant struck her across the head, he propped her up against the cabinet and stabbed her several times with an ice pick. There was no legal evidence of provocation or mitigating circumstances as in *State v. Fine,* supra. The appellant's theory that the companionship and long and amorous relationship between Miss Duckett and the appellant and the granting appellant permission to visit her in November so that she could turn him over to the police because her check and credit card were missing does not rise to the level of extenuating or mitigating circumstances so as to justify the giving of an instruction on assault without malice. Under the facts of this case as in *State v. McCoy, State v. Lane,* and *State v. Webb,* all supra, the appellant was either guilty of assault with malice or was entitled to an acquittal.

We find no error in refusing to give the offered instruction on assault without malice.

We have read the entire record, the briefs and the authorities relied upon by the parties and conclude that there is no prejudicial error. The judgment of conviction must therefore be affirmed.

The judgment is affirmed.

All the Judges concur.

13. *State v. Johnson,* 461 S.W.2d 724 (Mo.1971) is a case where no lesser included assault instruction is required. *State v. Fine,* 324 Mo. 194, 23 S.W.2d 7 (1929) is an example where such an instruction is required—brandishing a corn knife.