**STATE of Missouri, Respondent,**

v.

**Leroy ELDRIDGE, Appellant.**

**No. 37912.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

May 17, 1977.

Motion for Rehearing and/or Transfer
Denied July 21, 1977.

Application to Transfer Denied
Sept. 12, 1977.

Mary Louise Moran, Asst. Public Defender, Robert C. Babione, Public Defender and Joseph W. Warzycki, Asst. Public Defender, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Preston Dean, W. Mitchell Elliott, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., Nels C. Moss, Jr., Asst. Circuit Atty., St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

Leroy Eldridge, charged by indictment under the Second Offender Act, § 556.280 RSMo 1969, was found guilty of murder in the second degree by a jury and sentenced by the court to the custody of the Department of Corrections for a term of twenty-four years.

Appellant does not challenge the sufficiency of the evidence, but does contend the trial court erred in refusing a requested instruction on self-defense. We shall set forth with particularity the evidence bearing on this issue.

Thomas Davis and his wife resided in the first floor apartment at 1901 Virginia Avenue in St. Louis City. They rented the second floor apartment to Margaret Rickard and her mother. Sometime in September 1974, a Mrs. Brione and her five children moved in with the Rickards. About the same time appellant, a brother of Margaret, began to stay in the Rickard apartment.

On the evening of December 7, Mrs. Davis delivered a note to the Rickard apartment in which she stated that the rent was to be increased from $60 to $65 a month, and that appellant and the Briones would have to leave. When appellant returned to

the apartment he was informed of the note from Mrs. Davis. Shortly thereafter he started to go to the basement where his daughters, Cindy and Tina, were doing some laundry. He had been drinking, and on the way he stumbled and fell. Mrs. Davis heard a "stomping" and went to the steps and called, "What in the world happened?" Her husband, who also had been drinking, shouted, "What in the 'H' is he trying to do, tear the house down?" Margaret had followed her brother downstairs and she and Mrs. Davis exchanged some words. Mr. Davis then appeared at the doorway shouting and brandishing a .22 caliber rifle. He and appellant shouted at each other, during which appellant said, "I'll get you, I'll get you," and Mr. Davis waived the rifle in the direction of appellant and his daughters. Mrs. Davis got her husband back inside their apartment and closed the door. Appellant then went to the second floor apartment where he obtained a .30 caliber rifle. As he came down the stairs he loaded the rifle and "levered" it, and then went to the Davis apartment where he beat on the door with the rifle, shouted an obscenity, and called out "Shoot me now." Mrs. Davis told her husband that appellant "was coming to kill him and he'd better be prepared."

Mrs. Davis either did call or attempted to call the police. Her husband picked up his rifle and went to the door. At least two shots were fired. Appellant was hit in the neck and Davis was shot through the heart.

Cindy and Tina were the only eye-witnesses to the actual shooting. Their testimony was offered by the State after having them declared to be hostile witnesses. Cindy, 16 years of age at the time of trial, testified that when appellant first went to the basement she pleaded with him to go back upstairs, but he loaded the rifle and hit the door to the Davis apartment with the rifle, shouted an obscenity and said, "Shoot me down, now." Mr. Davis then opened the door and there was some shouting between the two. According to Cindy, appellant was "looking down" and the gun was "pointing down." He never held the rifle so it was pointing toward Mr. Davis.

She and Tina were both asking or telling appellant to go back upstairs and appellant was in the "process of turning" toward Cindy "as if he was coming back down;" he "was turning away" then Cindy heard a gunshot and appellant was hit. He then "fell back" and his rifle "went off." According to Cindy, the second shot was the loudest of the two. She did not see appellant cock the rifle, pull the hammer back, pull the trigger, or "lever" the gun.

Tina, age 15 at the time of the trial, testified to the events prior to the shooting substantially the same as Cindy. As to the actual shooting she testified: "He [appellant] looked up, and I kept screaming and my sister too to put the gun down. He looked at me and looked up again, and he started bringing the rifle down and started turning and just began to turn. * * * He was turning away. * * * He had just began to turn, * * * [and his rifle] was slanted at the ground, but not completely down." She then heard a shot and appellant fell back, and his weapon then went off.

▮ Appellant argues that "viewed as a single episode" the evidence supports a finding that Davis was the aggressor, that both parties were armed, and that the jury could have found that Davis fired first. We do not agree that the events can be viewed as a single episode. There were two episodes. When Davis returned to his apartment the first episode ended. There was no continuing threat to appellant, and no occasion for him to take any action to protect himself or others. What occurred thereafter was a new and different occurrence in which appellant, not Davis, was the aggressor. One who is the aggressor or who provokes the encounter in which he kills another is not entitled to invoke the right to self-defense, unless he previously, in good faith, withdraws from the conflict in such a manner as to have shown his intention to desist. *State v. Spencer,* 307 S.W.2d 440 (Mo.1957); *State v. Sherrill,* 496 S.W.2d 321 (Mo.App.1973).

The court gave Instruction No. 8 on excusable homicide by reason of accident in the form of MAI–CR 2.28. Appellant requested an instruction on justifiable homicide by reason of self-defense and submitted an instruction in the form of MAI–CR 2.40 which contained a paragraph submitting the issue of whether appellant had in good faith withdrawn or attempted to withdraw from the difficulty in which he previously had been the aggressor. No instruction submitting self-defense was given.

 As a general rule, the defenses of self-defense and accident are inconsistent. *State v. Randolph,* 496 S.W.2d 257 (Mo.banc 1973). If the shot was fired in self-defense, it required the voluntary act of appellant; if the shot was accidental, the act was involuntary. *State v. Peal,* 463 S.W.2d 840 (Mo.1971); *State v. Brown,* 502 S.W.2d 295 (Mo.1973). However, there are situations in which a defendant is entitled to the inconsistent defenses if supported by the evidence. In *State v. Peal,* supra, it was stated that "a defendant alone cannot provide the basis for such inconsistent defenses," but it was noted, by way of example, that if a defendant by his own testimony provides the basis for an accident instruction it must be given though he is entitled to an instruction on self-defense by reason of evidence offered by the State. We see no reason why an accused should be denied the benefit of both defenses when the evidence supporting each is supplied by the State.

 The instruction submitting murder in the second degree required a finding that appellant caused the death of Davis by shooting him, and that in doing so appellant intended to take his life. The State's case was based in part upon circumstantial evidence. There was no direct evidence that appellant fired the gun at Davis with intent to kill. From the circumstances that the bullet that caused Davis' death came from the rifle in appellant's hands the jury could infer that appellant shot Davis, and from the circumstance that appellant shot Davis the jury could infer that appellant intended to shoot him.

 The State offered the testimony of Cindy and Tina, who testified that before any shot was fired appellant turned or was turning away from facing the direction of Davis and that appellant's rifle was pointed downward (i. e. not toward Davis). It was not until then that the Davis rifle was fired. From this evidence the jury could have found, but would not be required to find, that appellant was attempting in good faith to withdraw from the difficulty in such a manner to have indicated to Davis his desire to withdraw, but that Davis fired and shot appellant in the neck, and that as appellant fell back his rifle fired. This evidence supported the giving of the instruction on excusable homicide on the theory that appellant's rifle was discharged accidentally as he fell backwards. Accidental discharge, however, is not the only reasonable inference to be drawn from this evidence. Equally reasonable is the inference that appellant discharged his rifle intentionally, in self-defense, in an effort to prevent Davis from shooting him a second time. By refusing to instruct on self-defense the court in effect ruled as a matter of law that the testimony of Cindy and Tina would permit only a finding that appellant accidentally fired his rifle. We do not agree. The evidence entitled appellant to an instruction on justifiable homicide based on self-defense, and the court erred in refusing to so instruct the jury.

 In the absence of direct evidence that appellant intentionally shot and killed Davis the State had to rely upon circumstantial evidence of the fact. If the State is entitled to go to the jury on the circumstantial evidence of a voluntary shooting with intent to kill, the appellant is likewise entitled to submit a circumstantial case of a voluntary shooting in self-defense. What is sauce for the goose is sauce for the gander.

Other matters presented by appellant need not be ruled on this appeal.

The judgment is reversed and the cause remanded.

SIMEONE, C. J., and NORWIN D. HOUSER, Special Judge, concur.