STATE of Missouri, Respondent,

v.

R. V. PRIDE, Appellant.

No. 39137.

Missouri Court of Appeals,
St. Louis District,
Division One.

May. 9, 1978.

O. J. Gibson, Cape Girardeau, for appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Chief Counsel, Asst. Atty. Gen., Jefferson City, William L. Syler, Jr., Sp. Prosecutor, Cape Girardeau, for respondent.

SMITH, Judge.

This case reaches the writer on reassignment. An opinion was originally prepared by Judge McMillian which failed of acceptance by a majority of the division. With the exception of the portion of this opinion dealing specifically with Mr. Berkbigler and Mr. Broker, this opinion is substantially that prepared by Judge McMillian.

Appellant R. V. Pride appeals from a judgment entered upon a jury verdict in the circuit court of Cape Girardeau finding him guilty of robbery in the first degree (Count I), § 560.135 RSMo 1969, and assault with intent to kill with malice (Count II), § 559.-180 RSMo 1969. Because the jury was unable to agree upon the punishment, the trial court sentenced appellant to twenty (20) years imprisonment for Count I and five (5) years imprisonment for Count II, the sentences to run consecutively.

For reversal appellant argues that the trial court erred in: (1) refusing to grant appellant's motion for authority to obtain the services of a court reporter, § 600.150(2) RSMo Supp.1977; (2) refusing to give instructions to the jury on self-defense and the lesser offense of assault without malice; (3) failing to strike for cause four members of the jury panel; and (4) allowing the prosecution such wide latitude in closing argument to the jury. For the reasons discussed below, we affirm.

No question as to the sufficiency of the evidence has been raised; therefore, only that evidence necessary for our decision will be discussed. On October 21, 1976, Ms. Mabel Stewart was travelling south on interstate highway I–55. She turned off the highway and parked her car on the truck parking side of the highway rest area in Cape Girardeau. She locked her car and went into the women's restroom. As she was leaving one of the stalls in the restroom, someone grabbed her around the neck and pushed her to the floor. Ms. Stewart testified that she was beaten about the head and robbed of her car keys and watch. She identified Roscoe James Pittman as the robber. She further testified that appellant did not attack or threaten her, but did enter the restroom on one occasion.

Gary Lively, a truck driver, heard Ms. Stewart scream as he was coming out of the men's restroom. He testified that he saw Pittman standing inside the women's restroom and appellant standing "a foot or so away." Pittman and appellant then proceeded toward their car. Lively followed them and copied the license number of the car the two men were about to enter and called the police on his CB radio.

In the meantime, Ms. Stewart had gotten her pistol from her car and enlisted the aid of another truck driver, Phillip Wayne Brough, to help stop Pittman and appellant. Brough took the gun from Ms. Stewart and walked toward the car, holding the gun at his side. Brough testified that when he was within twenty or thirty yards, the man

on the passenger side of the car (Pittman) leveled a .22 caliber rifle at him. Brough stopped and jumped behind a picnic table. Pittman and Brough exchanged shots. Then Pittman and appellant got in their car and drove off. Brough further testified that he fired one more shot as the car sped away. No one was seriously injured. Pittman and appellant were arrested later by the Jackson police.

■ Appellant first argues that the trial court erred in refusing to grant appellant's motion for authority to obtain the services of a court reporter. Appellant argues that, as a poor person, he was entitled to take depositions of the prosecution's three principal witnesses at state expense. See Rule 25.41, V.A.M.R.; § 600.150(2) RSMo Supp. 1977, and that the inability to take such depositions was prejudicial to the preparation of his case. Appellant contends that the statute plus *State v. McCormick,* 426 S.W.2d 62 (Mo. banc 1968), *cert. den.* 394 U.S. 930, 89 S.Ct. 1199, 22 L.Ed.2d 460 (1969), made the granting of this kind of pretrial motion "virtually mandatory."

Appellant first filed a motion for authority to obtain the services of a court reporter on January 13, 1977. The motion was denied January 19. Appellant renewed this motion just before trial on February 11. The prosecution opposed the motion for several reasons: counsel for appellant had been present throughout the trial of Roscoe James Pittman, appellant's alleged companion, during which counsel heard the testimony of the three witnesses; counsel had a transcript of the preliminary hearing and the opportunity to talk informally with the witnesses at the first trial; and that taking the depositions would only serve to delay the proceedings. The trial court again denied the motion, apparently agreeing with the prosecution.

In *McCormick,* supra, our Supreme Court held that the denial of an accused's pretrial motion as a poor person to take depositions and for stenographic services at state expense would not be considered a violation of due process where defendant failed to show how he was or could have been prejudiced by the refusal of the trial court to provide free stenographic services. 426 S.W.2d at 63; *cf. State v. Wallace,* 504 S.W.2d 67, 70 (Mo.1973) (equal protection); *State v. Aubuchon,* 381 S.W.2d 807, 812 (Mo.1964) (equal protection). The Supreme Court emphasized the lack of legislative authority to provide free stenographic services. 426 S.W.2d at 63, citing *State v. Aubuchon,* supra. Although there is now specific legislative authority which provides funds for services needed for adequate representation of indigent persons, § 600.150(2) RSMo Supp.1977 (1972 Mo. Laws 1039, § 12, Amended in 1976), we do not read the statute to require the trial court to *automatically* advance funds. The trial court must first find " . . . after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the indigent person is financially unable to obtain them. . . . " Evidently the trial court did not find the services were necessary in the present case.[1]

Appellant has only alleged generally that the failure of the trial court to grant the motion was prejudicial to the preparation of appellant's case for trial. For this reason we are unable to review the sufficiency of the trial court's finding that the services were not necessary. Appellant has failed to allege or establish how he had been prejudiced by the trial court's failure to advance the funds. *See State v. McCormick,* supra. Our ruling on this point, however, in no way passes upon the adequacy of the reasons advanced by the prosecution in the

1. We note that the statute requires the trial court, " . . . after appropriate inquiry in an ex parte proceeding . . . .," to make two findings before advancing any funds: (1) the services are necessary and (2) the indigent person is financially unable to obtain them. The trial court in the present case simply denied appellant's motion, thus implicitly finding that the services were not necessary (appellant had already been proven to be a poor person). In order to facilitate our review of future motions pursuant to § 600.150(2) RSMo Supp. 1977, we request the trial court to include in the record his findings and indicate briefly his reasons.

**430**

present case as substitutes for the taking of depositions.

 Secondly, appellant argues that the trial court erred in refusing to give instructions[2] to the jury on the law of self-defense and the lesser offense of assault without malice. Appellant argues there was sufficient evidence as a matter of law: the evidence showed Brough approached appellant with a gun in his hand and actually fired at the car as it drove away. Appellant contends this evidence established that appellant could have reasonably believed that his life or personal safety was immediately threatened and was therefore entitled to an instruction on self-defense. E. g., State v. McDonald, 527 S.W.2d 380, 381 (Mo.App.1975). We disagree and find that appellant was not entitled to an instruction on self-defense as a matter of law.

 If there is any substantial evidence putting self-defense in issue, it is the duty of the trial court to instruct on self-defense as part of the law of the case.

§ 546.070 RSMo 1969; Rule 26.02, V.A.M.R.; see, e. g., State v. Austin, 367 S.W.2d 485, 486 (Mo.1963); State v. Nunes, 546 S.W.2d 759, 764 (Mo.App.1977). In such a situation the trial court must instruct on self-defense whether or not the defendant requested the instruction and even though the instruction requested or submitted by the defendant was defective. State v. Spencer, 307 S.W.2d 440, 443 (Mo.1957); State v. Sherrill, 496 S.W.2d 321, 325 (Mo.App.1973). Under the so-called withdrawal doctrine, however, which is as applicable to assault as to homicide, one who was the aggressor or who provoked the difficulty in which he killed (or injured or assaulted) another cannot invoke the right of self-defense to excuse or justify the homicide (or injury or assault), unless he had previously withdrawn from the combat in such a manner as to have shown his intention in good faith to desist. State v. Spencer, supra (assault); State v. Eldridge, 554 S.W.2d 422, 424 (Mo.App. 1977) (second degree murder); State v.

2. Instruction No. A—
 "If you do find the defendant guilty under Count II of assault with intent to kill with malice aforethought, you must consider whether he is guilty under Count II of assault with intent to kill without malice aforethought.
 "As to Count II, if you find and believe from the evidence beyond a reasonable doubt:
 First that on or about October 21, 1976, in the County of Cape Girardeau, State of Missouri, Roscoe Pittman shot at Phillip Wayne Brough, and
 Second, that he did so with intent to kill Phillip Wayne Brough, and
 Third, that the defendant knowingly and intentionally aided or encouraged the person who engaged in the conduct submitted in the above paragraphs,
 then you will find the defendant guilty under Count II of assault with intent to kill without malice aforethought.
 "However, if you do find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty under Count II of that offense.
 "If you find the defendant guilty under Count II of assault with intent to kill without malice aforethought, you will fix his punishment:
 * * * * * *
 (MAI–CR 6.24)"
 Instruction No. B—
 "One of the issues in this case is whether the use of force on Phillip Brough was a justifiable

assault. By 'justifiable assault' is meant the use of force on another in lawful self-defense. On that issue you are instructed as follows:
 1. The State has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the evidence in this case leaves in your mind a reasonable doubt as to whether the defendant acted in lawful self-defense, then you must find the defendant not guilty.
 2. If the defendant had reasonable cause to believe and did believe that he was in immediate danger of death or serious bodily harm and had reasonable cause to believe, and did believe, that it was necessary for him to act as he did to protect himself from such danger, then you are instructed that he acted in lawful self-defense and must be acquitted.
 3. In determining whether or not the defendant acted in lawful self-defense you should consider all of the evidence in the case.
 4. If the defendant had reasonable cause to believe and did believe that he was in immediate danger of death or serious bodily harm and that it was necessary for him to act as he did, it is of no consequence that the appearances later turned out to be false. If he acted in self-defense, as submitted in this instruction, he must be acquitted even though there was no purpose on the part of Phillip W. Brough to kill him or to do him serious bodily harm and no actual necessity to use the force which he did. (MAI–CR 2.40 (modified))"

*Sherrill,* supra (second degree murder); *see also* MAI–CR Comments, Self-defense 37–40 (Richardson ed. 1974). Furthermore, "[t]here is a difference between 'withdrawal in good faith' from combat, and a mere 'retreat' which may be and often is a continuance of hostilities. A 'withdrawal' is an abandonment of the struggle by one of the parties and such abandonment must be perceived by the other." *State v. Mayberry,* 360 Mo. 35, 226 S.W.2d 725, 727 (1950), *citing State v. Heath,* 237 Mo. 255, 141 S.W. 26, 29 (1911).

In the present case it is true that Brough approached Pittman and appellant with a gun in his hand. Although at this point Brough became the aggressor, appellant is not entitled to the defense of self-defense because appellant was himself the aggressor in the robbery and had not indicated in any way that he was withdrawing from the combat so as to revive his right to self-defense. Because the robbery and the assault are so related in time, proximity and purpose, even though the victims are different, we view each as part of a single incident. Pittman and appellant were leaving the rest rooms, the scene of the robbery, and walking toward their car when Brough started to approach them. In our view the action by Brough prevented Pittman and appellant from escaping with the stolen property and thus successfully completing the robbery. In other words, under these circumstances, appellant was merely retreating and not withdrawing in good faith. For this reason the trial court did not err in refusing to give an instruction on self-defense.

■ Nor do we find error in the trial court's refusal to give an instruction on the lesser charge of assault without malice. Whether an instruction should be given on a lesser included offense depends upon whether there are facts in evidence sufficient to arguably show a lack of an essential element of the higher degree of the offense.[3] *State v. Howell,* 524 S.W.2d 11, 21 (Mo. banc 1975); *State v. Lee,* 549

S.W.2d 934, 941 (Mo.App.1977). Stated another way, instructions on lesser included offenses must be given only if they are supported by the evidence, *e. g., State v. Lane,* 537 S.W.2d 569, 570 (Mo.App.1976); *State v. Webb,* 518 S.W.2d 317, 320–21 (Mo. App.1975). Assault without malice, § 559.-190 RSMo 1969, is assault with intent to kill or do great bodily harm or to commit a felony; assault with malice aforethought, § 559.180 RSMo 1969, is assault with intent to kill or maim by shooting, stabbing or by means of a deadly weapon or force likely to produce death or great bodily harm. "While many decisions have stated that the essential ingredient of § 559.180 is 'malice aforethought,' upon closer examination the true distinction 'lies in a general weighing together of all the facts and circumstances including . . . the presence or absence of provocation . . . the weapon or means or force employed, . . . [and] the manner in which the weapon or force was employed . . . .' " *State v. Lee,* 549 S.W.2d 934, 940 (Mo.App.1977), *citing* MAI–CR Comments, Assault 22–23 (Richardson ed. 1974). In addition, we note that there is a presumption of malice in an assault with a deadly weapon in the absence of countervailing circumstances. *E. g., State v. Kopf,* 481 S.W.2d 7, 9 (Mo.1972); *State v. Johnson,* 461 S.W.2d 724, 727 (Mo. 1971); *State v. Jones,* 518 S.W.2d 322, 325–26 (Mo.App.1975).

■ The evidence in the present case showed that Pittman fired a rifle in the direction of Brough and then fired again at the picnic table behind which Brough had taken cover. Appellant did not testify. The evidence also showed that Pittman and appellant had moments earlier taken part in a robbery and were in the act of leaving the scene when the shooting occurred. We can find no evidence of any countervailing circumstances so as to justify the giving of instructions on assault without malice. As discussed above, appellant was not entitled to use self-defense as a theory of defense. Under the facts presented, appellant was

3. We distinguish this case from homicide cases wherein all lesser offenses must be instructed

upon. *See* MAI–CR 6.02, Notes on Use and Caveats.

either guilty of assault with malice or entitled to an acquittal. *See State v. Lee, supra; State v. McCoy,* 530 S.W.2d 8, 10 (Mo.App.1975).

Thirdly, appellant argues that the trial court erred in refusing to strike for cause four jurors, Mrs. Norman Tuschoff, Mrs. Norman Wille, Ronald Broker, and Leroy Berkbigler, when they as veniremen indicated bias and prejudice against appellant during voir dire. The state argues, however, that there was no bias or prejudice expressed and that appellant fails because he did not allege that he was forced to expend one of his peremptory challenges as a result of the trial court's refusal to strike the jurors for cause.

■ A defendant in a criminal case has the right to a full panel of qualified jurors before he is required to expend his peremptory challenges; if a defendant is required to exercise one of his peremptory challenges to remove a prospective juror who should have been stricken for cause, the judgment must be reversed and the cause remanded for a new trial, *e. g., State v. Land,* 478 S.W.2d 290, 292 (Mo.1972), citing *State v. Foley,* 144 Mo. 600, 46 S.W. 733, 735 (1898); *State v. Hirsack,* 465 S.W.2d 543, 545 (Mo. 1971). Our supreme court recently held in *State v. Morrison,* 557 S.W.2d 445 (Mo. 1977), that a defendant is entitled to both a qualified panel and the statutory number of peremptory challenges, and that he need not sacrifice one to the other. See also *State v. Thompson,* 541 S.W.2d 16, 17 (Mo. App.1976). Furthermore, the court in *Morrison,* supra, held that a defendant does not waive his right to challenge on appeal the action of the trial court in overruling his challenge to the prospective jurors for cause, regardless of whether his peremptory challenges were already exhausted, or if not, whether he used a peremptory challenge to dispose of the juror. *Id.,* 557 S.W.2d at 447; *cf. Theobald v. St. Louis Transit Co.,* 191 Mo. 395, 90 S.W. 354, 361 (1905) (civil suit); *Golden v. Chipman,* 536 S.W.2d 761, 762–63 (Mo.App.1976) (civil suit). Therefore, applying the holding in *Morrison,* supra, appellant did not have to allege that he was forced to expend one of his peremptory challenges in order to preserve his right to appeal this point.

■ We now consider whether the trial court abused its discretion by refusing to strike for cause the four jurors, Mrs. Norman Tuschoff, Mrs. Norman Wille, Ronald Broker, and Leroy Berkbigler. Denial by the trial court of a legitimate request by an accused to excuse for cause a partial or prejudiced venireman constitutes reversible error, *e. g., State v. Lovell,* 506 S.W.2d 441, 444 (Mo. banc 1974); *State v. DeClue,* 400 S.W.2d 50, 57 (Mo.1966). It is the duty of the trial judge to determine whether a challenged venireman should be allowed to serve as a juror, *e. g., State v. Thompson, supra.* Furthermore,

"... [d]etermination of a challenged venireman's qualifications initially rests within the sound judicial discretion of the trial judge and will not be lightly disturbed on appellate review; however, appellate courts are not required to give blind deference to a trial judge's exercise of discretion in this respect and should, when the question is raised, review the record and determine whether or not the trial judge, in fact, abused his discretion. ..." (Citations omitted.) *Id.* at 18.

■ A cause is to be tried by individuals who are free from partiality or bias for or against the litigant; jurors should come to the consideration of the case unaffected by any previous judgment, opinion or bias, either as respects the parties or the subject matter of the controversy. *See State v. Richards,* 536 S.W.2d 779, 785 (Mo.App. 1976); *State v. Hicks,* 530 S.W.2d 396, 398 (Mo.App.1975). In brief, appellant argues that the trial judge should have removed the jurors for cause because two jurors, Mrs. Tuschoff and Mrs. Wille, were related to police officers who were members of the police department which arrested appellant; another juror, Mr. Berkbigler, indicated that his wife had experienced an unpleasant encounter with blacks in the past (appellant is black); and the fourth juror, Mr. Broker, indicated that he was a truck driver and for that reason he would be a little more sympathetic to truck drivers.

■ We note that although Mrs. Tuschoff had heard about the case from her husband, a police officer of the police department involved in this case, both she and Mrs. Wille stated without reservation that they had not formed any opinion in regard to innocence or guilt. Although we would be less inclined to include as jurors in criminal cases persons who are related to law enforcement officers, we cannot say the trial court abused its discretion in refusing to strike for cause Mrs. Tuschoff and Mrs. Wille.

■ Neither the voir dire examination of Mr. Berkbigler[4] nor Mr. Broker[5] sufficiently demonstrated bias or prejudice to require the trial court to excuse them for cause. In neither case was either individual asked whether his experiences or sympathies would prevent him from fairly trying the case. In neither case do the answers indicate such unfairness. Mr. Broker agreed to a statement that as a truck driver he might be a "little more sympathetic" to truck drivers. Such an answer does not indicate bias or prejudice anymore than would an answer that a prospective juror tended to be sympathetic to the victim. Sympathy is not bias. It becomes such only when that sympathy prevents the juror from fairly deciding the case under the evidence and the law. There is no indication that Mr. Broker's "sympathy" reached that far.

■ Mr. Berkbigler indicated that his wife's experience would not affect him in deciding the case. He used the idiom "I don't really think so." This common vernacular to express a negative is not equivocation. As much as judges and lawyers might desire it, people generally do not speak in absolutes, probably because they realize that few things are ever absolute. To convert Mr. Berkbigler's attempt to fully disclose any possible ground he might have for bias into bias itself is totally unwarranted.

It should also be pointed out that nine potential jurors were challenged for cause by defendant. The court denied four challenges and sustained five. It is apparent that the trial court carefully considered the challenges, sustained those in which the potential jurors had demonstrated a degree of bias or prejudice and denied the remainder. We find no abuse of discretion.

■ Appellant's final argument is that the trial court erred in allowing the state such wide latitude in closing argument. Appellant argues that the prosecutor in closing argument referred to matters not included in the evidence presented and which were very prejudicial to appellant's case. Specifically, the prosecutor stated that appellant took a rifle from the trunk of the car and handed it to Mr. Pittman. The prosecutor also said, "it took four police cars to stop them". Appellant did not "set forth [these points] in detail and with particularity" in the motion for a new trial and therefore should not be entitled to appellate review because they were not properly preserved. Rule 27.20(a), V.A.M.R.; *State v. Madison,* 537 S.W.2d 563, 565 (Mo.App. 1976).

■ At trial appellant objected to the prosecutor's statement about the rifle on the ground that it was speculative. The trial court overruled this question. On appeal appellant now argues that there was

---

4. Voir dire examination—

"Mr. Gibson (appellant's counsel): Anyone else? Again, I am asking you to be very candid, very frank.

"Mr. Berkbigler: I just remembered that three colored fellows came into the store a few weeks back and scared the wife pretty badly.

"Mr. Gibson: Do you think that would affect you in some way in sitting on this type of case?

"Mr. Berkbigler: I don't really think so but I thought I would mention it."

5. Voir dire examination—

"Mr. Gibson (appellant's counsel): Who else indicated they had heard about the case from a source other than the newspaper?

"Mr. Broker: Just from the guys I work with. They said it was just hearsay what they told me.

"Mr. Gibson: Would that cause you in any way to form an opinion?

"Mr. Broker: I drive a truck; I don't believe it would.

"Mr. Gibson: The fact that you drive a truck, would that make you a little more sympathetic to truck drivers?

"Mr. Broker: Well, yeah."

no evidence as to where the rifle came from or that appellant was seen handling the rifle. The objection that the statement was speculative in no way called the trial court's attention to this additional ground. The trial court was thus not given the opportunity to rule upon the objection for that reason. For that reason, this point has not been properly preserved for review, e. g., *State v. Lang,* 515 S.W.2d 507, 511 (Mo. 1974); *see also State v. Franco,* 544 S.W.2d 533, 537 (Mo. banc 1976). Furthermore, to preserve an overruled objection for appellate review, in addition to being set forth with particularity in the motion for a new trial as discussed above, the objection made to the trial court must be substantially the same as that relied on in the brief on appeal, e. g., *State v. Merritt,* 564 S.W.2d 77 (Mo.App.1978); *State v. Harper,* 553 S.W.2d 895, 897 (Mo.App.1977).

 The trial court erroneously overruled appellant's objection to the prosecutor's statement that "it took four police cars to stop them." The evidence showed that only two police cars intercepted appellant's car on the highway. Although the prosecutor's remark was improper, we do not believe it can be said to have prejudiced appellant's case or to have influenced the jury's verdict, e. g., *State v. Johnson,* 539 S.W.2d 493, 513 (Mo.App.1976), *cert. den.* 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977); *State v. Knapp,* 534 S.W.2d 465, 469 (Mo.App.1975). The difference between the prejudicial impact of the improper reference to four police cars and that of the accurate reference to two police cars is not significant. While we would caution prosecutors against making inaccurate statements in closing argument, this particular mistake cannot be said to be reversible error in the present case.

Judgment affirmed.

CLEMENS, P. J., concurs.

McMILLIAN, J., dissents in separate opinion.

McMILLIAN, Judge, dissenting.

I must dissent. I disagree with the majority opinion and would reverse and remand for a new trial. Specifically, I believe the trial court erred in refusing to strike for cause four jurors: Mrs. Norman Tuschoff, Mrs. Norman Wille, Ronald Broker, and Leroy Berkbigler, when, as veniremen, they indicated bias and prejudice against appellant.

I would find that the trial court abused its discretion in refusing to strike for cause Mrs. Tuschoff and Mrs. Wille, who are both related to members of the Jackson City police department, which arrested appellant and investigated the present case. Mrs. Tuschoff had heard about the case from her husband, a member of the police department. Mrs. Wille's relationship is admittedly more tenuous; her brother-in-law is apparently the chief of the police department. Although I agree with the majority in that I would be less inclined than the trial court to include as jurors in criminal cases persons who are related to law enforcement officers, I would distinguish those persons who are related to law enforcement officers whose departments or units were specifically involved in the investigation of the case being tried. There is nothing prejudicial *per se* in being related to law enforcement officers. For example, one of the potential jurors was related to Jefferson City and St. Louis police officers and was not challenged for cause. However, the likelihood of independent information and a certain amount of bias when a potential juror is related to a member of the particular police department involved in the case should not be ignored. For this reason, I believe the trial court should have removed Mrs. Tuschoff and Mrs. Wille.

It is true that of appellant's nine challenges for cause, the trial court sustained five. I cannot, however, after a careful reading of the record of the voir dire examination, detect any significant differences between the responses of those veniremen retained and those removed. The majority opinion emphasizes that sympathy is not bias and that Mr. Broker's answer that as a truck driver he might be a "little more sympathetic" to truck drivers does not indicate bias or prejudice any more than an answer that a prospective juror would tend to be more sympathetic toward the victim. Mr. Broker was not indicating a natural

sympathy toward victims but toward truck drivers; he was himself a truck driver and had heard of the incident from other truck drivers. It must be remembered that the present case involved truck drivers (two of the three main witnesses for the prosecution were truck drivers) and, unfortunately, the dangerous aspects of highway travel. The trial court should have removed Mr. Broker.

I am unable to distinguish Mr. Berkbigler from two other veniremen who related similar racial experiences and were successfully challenged and removed from the jury. Mr. Berkbigler quite frankly disclosed that his wife had been scared by an unpleasant encounter with three black men in the past and answered "I don't really think so" to the question whether that experience would affect him. I cannot agree with the majority's characterization of Mr. Berkbigler's response as merely "common vernacular to express a negative" and believe that it does indicate some equivocation. Furthermore, I note that two other veniremen whose adverse racial experiences were more remote in relationship and time than Mr. Berkbigler's were removed—Mrs. Urhahn, whose sister's store was disturbed by three black men, and Mr. Lorenz, who disclosed racial problems during his military service in Vietnam. Mr. Berkbigler should have been similarly removed.

". . . [U]nder our system of jurisprudence there is no feature of a trial more necessary to the pure and just administration of the law than that every litigant should be accorded a fair trial before a jury of his countrymen who enter upon the trial totally disinterested and wholly unprejudiced. (Citation omitted.) And if for any reason, statutory or otherwise, a venireman is not in a position to enter the jury box with an open mind, free from any bias, he is not a competent juror. . . ." *State v. Holliman,* 529 S.W.2d 932, 942–43 (Mo. App.1975) (Simeone, P. J., concurring). Somewhat analogous to Judge Simeone's analysis in *Holliman,* although no single factor regarding the qualifications of the veniremen challenged in the present case would be sufficient to sustain a challenge

for cause, the cumulative effect of these factors would be sufficient, in my opinion, to sustain a challenge for cause against each. In view of the cumulative facts present in the record of the voir dire examination, I would reverse and remand for a new trial because the trial court refused to remove for cause the four jurors, thereby abusing its discretion.

In cases of this nature, a court must ask itself three questions: (1) was the defendant given a fair trial; (2) did the defendant have a fair hearing; and (3) was justice done. Here, in my opinion, the answer to each question is an unqualified no. Moreover, it is inconceivable that in the midst of a pool of qualified veniremen that a court would permit jurors in a suspect category to sit in final judgment of an accused. I cannot believe that if any reasonable person unfortunately found himself or herself under charges as a defendant would countenance as jurors to hear and decide their case who have the credentials of those four jurors permitted to serve in this case.

For the reasons given herein, I would reverse and remand the cause for a new trial.